The judgment is reversed, and cause remanded, with instructions.

---

## STURGIS v. GOVATOS et al. (No. 6396.)

(Court of Civil Appeals of Texas. Austin. Jan. 18, 1922.)

**1. Sequestration ⬅️21—Defendant in trespass to try title held not entitled to damages.**

In trespass to try title, where plaintiff sued out a writ of sequestration, but defendant replevied the property, and, though the sheriff was nominally in charge of the premises for about eight days, he did not deprive defendant of possession or interfere with his business, and defendant suffered no loss of profits, no actual damages were recoverable.

**2. Sequestration ⬅️21—Loss of credit not element of actual damages.**

Loss of credit may be looked to in assessing exemplary damages, but is not an element of actual damages from the wrongful levy of a writ of sequestration.

**3. Sequestration ⬅️21—Attorney's fees not recoverable as actual damages.**

Attorney's fees cannot be recovered as actual damages for the wrongful levy of a writ of sequestration.

**4. Sequestration ⬅️21—Issue of damages not submitted when no actual damages shown.**

Defendant, in trespass to try title, having proved no actual damage from the levy of a writ of sequestration, was not entitled to a submission of the issue of damages.

**5. Principal and agent ⬅️100(2) — Agent's bookkeeper held without authority to make oral lease pursuant to telegram from the agent.**

Where the son-in-law and bookkeeper of plaintiff's agent, on request of a prospective purchaser of a lease, wired the agent, asking what guaranty he would require for an extension of the lease, and received an answer stating the terms on which the lease would be extended, the bookkeeper had no authority, actual or apparent, to bind plaintiff by an oral contract, but only authority to communicate the contents of the telegram to the prospective purchaser.

**6. Landlord and tenant ⬅️18(3) — Evidence held to support findings as to lease by estoppel.**

Evidence held sufficient to support findings that defendant, having seen a telegram from plaintiff's agent stating the terms on which a lease would be extended, was led to believe that the lease would be extended, and thereby caused to purchase the lessee's business and make improvements in the building, that the agent on his return home visited the place of business and accepted defendant as his tenant, and that at the time he knew or had reasonable cause to

believe that defendant had acquired the business and made the improvements with the intention of holding the premises for an additional period in excess of the term of the original lease.

**7. Landlord and tenant ⟨key⟩17—Lessor held bound for extended term on principles of estoppel.**

Where defendant, having seen a telegram from plaintiff's agent stating the terms on which a lease would be extended, was led to believe that the lease would be extended and thereby caused to purchase the lessee's business and make improvements, and the agent on his return home visited the place of business and accepted defendant as his tenant for a term of two years in excess to that provided in the original lease, and at the time knew or had reasonable cause to believe that defendant had acquired the business and made the improvements with the intention of holding for such additional term, the lessor was bound on principles of estoppel.

Appeal from District Court, McLennan County; Erwin J. Clark, Judge.

Suit by John N. Sturgis against Peter Govatos and others. From a judgment in favor of the defendant Nick Andrews, plaintiff appeals. Affirmed.

Spell, Naman & Penland, of Waco, for appellant.

J. D. Williamson and Alva Bryan, both of Waco, for appellees.

JENKINS, J. This suit was brought by appellant in the ordinary form of trespass to try title, for a lot in the city of Waco, against Peter Govatos, Makes Ermelios, and Nick Andrews. Govatos and Ermelios filed a disclaimer, and Nick Andrews disclaimed as to title, but alleged that he was entitled to the possession of the property until the 1st day of March, 1922, by virtue of a lease from the plaintiff. At the time of filing the suit, the appellant sued out a writ of sequestration. The appellee Andrews replevied the property. The case was tried before a jury, and submitted upon the following special issues:

"First special issue: Did the defendant Nick Andrews and J. J. Abernathy, acting for and in behalf of the plaintiff herein, enter into an oral agreement of lease, by the terms of which the premises in question were rented to the said Andrews for a term of years, as alleged by the defendant, at a rental of $250.00 per month up to March 1, 1920, and for a rental of $300.00 per month for two years thereafter?" To which the jury answered: "Yes."

"Second special issue: Was the defendant Nick Andrews before he closed the trade with Peter Govatos shown or made acquainted with the contents of a certain telegram sent by J. H. Sturgis from Winslow, Ark., under date of August 28, 1918, to J. J. Abernathy at Waco, Tex., wherein the said Sturgis offered an extension of the lease in question according to the terms and effect thereof?" To which the jury answered: "Yes."

"Third special issue: Was the defendant Nick Andrews, relying upon the terms and conditions of the telegram referred to in special issue No. 2, led to believe that the lease in question would be extended, and was thereby caused to purchase the business of Peter Govatos, and to make improvements in the building in which the said business was located?" To which the jury answered: "Yes."

"Fourth special issue: Did the said J. H. Sturgis, on his return home, visit the place of business of the defendant Andrews, and accept the said Andrews as his tenant for a term of two years in excess to that provided for in the original lease to Peter Govatos?" To which the jury answered: "Yes."

"Fifth special issue: Did the said J. H. Sturgis, at the time he visited the place of business of the said Nick Andrews, know or have reasonable cause to believe that the said Andrews had acquired such business, and made improvements thereon, with the intention of holding the said premises for a period of two years in excess of the time stipulated in the original contract lease between the said Sturgis and Peter Govatos?" To which the jury answered: "Yes."

"Sixth special issue: Was J. J. Abernathy, acting for and in behalf of the said J. H. Sturgis, advised by Peter Govatos that a different trade had been made between him and the said Nick Andrews than the one originally proposed by the said Andrews, and thereby led to believe that the said Nick Andrews had moved into the premises for the purpose only of occupying the same for the unexpired period of the lease originally held by the said Peter Govatos?" To which the jury answered: "No."

"Seventh special issue: What was the reasonable rental value of the premises occupied by the defendant, Nick Andrews, and for which the plaintiff herein is suing, per month, from the first day of March, 1920, to date hereof?" To which the jury answered: "$300.00 per month."

The evidence is sufficient to sustain these findings. Such evidence is, in part, as follows:

J. H. Sturgis was the brother of appellant, John N. Sturgis, the owner of the property, who lived in Missouri. J. H. Sturgis was his agent, with full authority to manage the property, as if it were his own. He executed a written lease to Peter Govatos for a term of five years, which would have expired on the 1st day of March, 1920. Peter Govatos was operating a café in the building, which he desired to sell to Nick Andrews; and Nick Andrews was willing to purchase the same upon a consideration of $10,000, provided he could get an extension of the lease for at least two years. J. J. Abernathy was the son-in-law and bookkeeper of J. H. Sturgis. Govatos and Andrews went to the office of J. H. Sturgis for the purpose of ascertaining if he would extend the lease for two years after the expiration

of the lease of Peter Govatos. Sturgis at the time was in Winslow, Arkansas. These parties found Abernathy in Sturgis' office, explaining to him their wishes in the matter, and informed him that Andrews would purchase the café from Govatos only in the event that he could obtain an extension of the lease for at least two years. Abernathy sent the following telegram to Sturgis:

"August 27, 1918.

"J. H. Sturgis, Winslow, Arkansas, c/o Mountain Lodge Hotel. What would you require as guaranty for extension of Govatos' lease for three or more years, fixtures are now clear. He is anxious to sell but must have at least two additional years' lease. Wire me collect best terms you will consider. Think we can get two thousand dollar guaranty.

"[Signed] J. J. Abernathy."

Abernathy had previously written to Sturgis concerning this deal, and Sturgis had replied. These letters are not in the record, and consequently we do not know their contents. Abernathy stated that his letter to Sturgis was in connection with other matters, and that his reply was somewhat ambiguous as to the matter of the lease. This telegram was sent at the request of Govatos, who paid for the same. Sturgis replied as follows:

"Winslow, Ark., August 28, 1918.

"J. J. Abernathy, Waco, Texas. Night letter received. Will extend lease for two more years at $300 per month; entire lease for four years to be guaranteed or a deposit made in advance to cover each year rent. May return on seventh. [Signed] J. H. Sturgis."

Govatos and Andrews called on Abernathy and were shown this telegram. Andrews said: "I take it." They discussed with Abernathy as to a satisfactory bondsman to guarantee the lease, and Andrews stated that his brother at Hillsboro would sign the guaranty, and that inquiry of a banker at Hillsboro would show that he was responsible. Andrews and Govatos closed their deal, Andrews paying $10,000 for the café, and taking possession of the same. He thereupon proceeded to make permanent and valuable improvements in the building, which added to the value of the same at least $3,000. Shortly after Sturgis returned to Waco, he and Abernathy visited the café. Andrews had informed Abernathy, at the time he accepted the lease, that he intended to remodel the café. Abernathy and Sturgis went through the café, and saw the improvements that had been made and were being made. Abernathy introduced Sturgis to Andrews, and said: "This is Mr. Andrews, who bought the place from Govatos." Mr. Sturgis said: "I am glad to have got a better man that Mr. Govatos." He said to Andrews: "You keep a good clean place. * * * You can stay in the building." Andrews did not give any security for the rent, and did not pay a year's

rent in advance, nor offer to do so, until after the expiration of the Govatos lease, at which time he tendered to Sturgis $3,600 in payment of one year's lease, which Sturgis refused to accept. Andrews paid Sturgis $250 a month, each month, for the unexpired term of the Govatos lease. Sturgis accepted this rent, and did not demand any security for his rent, nor the payment of any rent in advance.

## Opinion.

Appellant's first assignment of error is that the court erred in refusing to peremptorily instruct the jury to find in his favor. The grounds for such instruction as claimed by appellant are, in substance, that the undisputed evidence shows that Abernathy never made any contract with Andrews for the extension of the lease; that, if he did so, it was without authority, and that, if he made any such contract, the same was oral, and void under the statute of frauds. It is not necessary, in order to sustain the judgment of the court, to hold that Abernathy made any lease, or that he had authority to execute any lease as agent for the owner of the property. In the first instance, Abernathy acted as agent of Govatos and Andrews, in communicating the desire of these parties to lease the property, and upon the terms that they would take the same. In the second place, Abernathy was the medium employed by Sturgis, in connection with the telegraph company, to communicate to these parties upon what terms he would extend the lease.

Appellant submits the legal proposition that no lease contract was closed, unless the fact that Andrews' acceptance of the terms was communicated to Sturgis. This is a correct proposition, and there is no direct testimony that Abernathy informed Sturgis that Andrews had accepted his proposition. Indeed, Abernathy denied having so informed Sturgis, and Sturgis denied having received such information from Abernathy. The jury were not bound to accept this evidence. In considering whether or not a finding is supported by the evidence, an appellate court looks alone to the evidence in behalf of appellee. The fact that Sturgis was informed by Abernathy that Andrews had accepted his proposition was provable, like any other fact, by circumstantial evidence. The circumstances of this case justified a finding that Sturgis had accepted his proposition. The lease to Govatos forbade him to sublet the premises without the consent of Sturgis. Sturgis, upon his return, found Andrews in possession, operating the café. Naturally he would desire to know by what authority Andrews was there, and, knowing that Andrews had discussed the matter with Abernathy, it is fair to presume that he would inquire of Abernathy as to the transaction. Appellant insists that when Sturgis returned and found Andrews in possession and operating the café

237 S.W.—20

he might reasonably have concluded that he was there under the lease to Govatos. If Sturgis had never known that Andrews was contemplating the purchase of the café, and that he would do so only in the event that he could obtain a two years' extension of the lease, which is fairly deducible from the telegram sent by Abernathy, he might have supposed that Andrews was there under the Govatos lease, and made no further inquiry in reference to the matter; but, in view of the telegram referred to, the only reasonable presumption that can be indulged is that Sturgis knew, or had reason to believe, that Andrews was there, supposing that he had obtained two years' extension of the lease; and Sturgis' failure to make any further inquiry of Andrews about this matter doubtless arose from the fact that Abernathy had informed him of what had passed between himself, Govatos, and Andrews. At least, the jury were justified in so believing.

It is true, as contended by appellant, that a written proposition for a lease is not taken out of the statute of frauds by oral acceptance of such proposition. Foster v. N. Y. L. Co., 2 Tex. Civ. App. 505, 22 S. W. 260; Daugherty v. Leewright, 174 S. W. 841; Donada v. Power, 184 S. W. 793. But the facts in this case are sufficient to take this lease out of the statute of frauds, for the reason that it shows that there was delivery of possession, payment of rents, and valuable improvements made by Andrews. Edwards v. Old Settlers' Ass'n, 166 S. W. 423, and authorities there cited.

Under appropriate assignments of error, appellant further contends that the verdict of the jury should have been set aside and his motion for new trial granted, for the reason that there is no evidence to support the findings of the jury. We have disposed of this issue by what we have said supra, in reference to the assignment of error as to the refusal of the court to peremptorily instruct the jury to return a verdict for appellant.

The findings of the jury upon the second and third and fifth special issues are sufficient to sustain the judgment herein upon the ground of estoppel.

The finding of the jury to the fourth special issue is to the effect that J. H. Sturgis, upon his return home, visited the café, and, there finding Andrews in possession, accepted him as his tenant for a term of two years, in excess of that provided for in the original lease to Peter Govatos. We think the evidence is sufficient to sustain this finding, and upon this issue alone the proper judgment was rendered by the trial court.

The evidence shows that Andrews complied with all of the terms required by Sturgis in his telegram, except that he did not furnish a guaranty for the rent, and did not pay a year's rent in advance. The evidence is sufficient to show that Sturgis waived these terms of the contract, and such is the effect of the findings of the jury in this case.

[1] Appellee filed a cross-action for damages for the alleged wrongful issuance and suing out of the attachment herein. He requested that this issue be submitted to the jury, which request was refused by the court. Appellee has filed assignments of error as to this action of the court.

It was held in Trawick v. Brown, 79 Tex. 460, 14 S. W. 564, that an ordinary levy upon real estate did not afford a ground for actual damages, for the reason that, under our statute, the real estate is not taken into actual possession under such levy, and therefore there is no trespass. In the instant case the only ground for actual damages alleged by appellee in his cross-action is the loss of profits to the amount of $1,000. The undisputed evidence shows that while the sheriff was nominally in charge of the premises for about eight days, he did not, in fact, deprive appellee of such possession, and did not interfere with appellee's business during that time. There is no evidence in the record that appellee suffered any loss of profits by reason of the levy of the writ of sequestration.

[2, 3] Appellee claimed exemplary damages, alleging as a ground therefor loss of credit and payment of attorney's fees.

In the case of Trawick v. Brown, supra, the court said:

"Loss of credit may be looked to in assessing exemplary damages, but according to the rule in this court it is not an element of actual damages in any case."

It is well settled that attorney's fees cannot be recovered as actual damages, and there was no such claim in this case. The court further said in Trawick v. Brown, supra:

"We think therefore that defendant's plea does not show actual damage, and are of the opinion that in cases where injury to property is claimed exemplary damages should not be allowed without allegation and proof of actual damage."

[4] Appellee having failed to prove any actual damage, the court did not err in refusing to submit the issue of damages, by reason of the writ of sequestration being sued out and levied.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.

KEY, C. J., and BRADY, J. [5] We agree to the affirmance of this case, but not to the conclusion that the evidence supports the finding that appellant entered into an oral contract with Nick Andrews. In our opinion, there is not sufficient evidence in the record to show that Abernathy had any authority to bind appellant by contract. The limit of his authority, actual or apparent,

was to communicate the contents of the telegram mentioned in special issue No. 2.

[6, 7] Our concurrence in the result is based upon the findings of the jury to special issues 3, 4, and 5, which we think are supported by the evidence. Upon principles of estoppel, these findings are sufficient to bind the appellant.