### FIRST NAT. BANK OF LITTLEFIELD v. COOPER et al. (No. 3117.) *

Court of Civil Appeals of Texas. Amarillo.
Dec. 5, 1928.

Rehearing Denied Jan. 9, 1929.

E. A. Bills, of Littlefield, and Bean & Klett, of Lubbock, for appellant.

Rob't A. Sowder, of Lubbock, for appellees.

HALL, C. J. Defendant in error, Cooper, sued the First National Bank of Littlefield and J. C. Hilburn, its president, and F. K. Allbright, as sureties on the bank's attachment bond, J. C. Montgomery, sheriff of Cochran county, and E. A. Bills and J. W. Blaylock, sureties on the indemnity bond, to recover damages for the wrongful and malicious levy of a writ of attachment upon certain lands alleged to be the property of Cooper.

The substance of the petition is that the bank had previously sued him upon a promissory note, and in that action procured an attachment writ which was levied upon his land; part of the premises attached being his homestead. He sets out in detail the attachment proceedings, giving the substance of the pleadings, the affidavit for attachment, bond and writ, with the sheriff's return, and sets out briefly the stipulations of the indemnity bond which the bank gave the sheriff prior to the levy of the attachment. He further alleges that he had been for many years, and was at the time of the levy, the owner of the 400 acres of land upon which he resided, with his family, as his homestead; that at the time of the levy there was growing upon the premises 30 acres of cotton, 60 acres of higera, 30 acres of maize, 30 acres of corn, and 60 acres of wheat; that none of said crops had been severed from the land and none had fully matured; that he was preparing to harvest all of the crops except the wheat and cotton at once, and would have harvested the same but for the levy by the sheriff, which was made at the orders of the other defendants; that such levy took from him the right to harvest his said crops; that before the suit was filed against him, the bank and Hilburn and Allbright knew that plaintiff was not indebted to the bank for the amount evidenced by the note sued on and that the note was illegal and void, in that it had been given for corporate stock in the Littlefield State Bank of Littlefield; that the defendant bank was not an innocent holder for value, having purchased the note after its maturity, and said bank knew and had knowledge of facts sufficient to charge them with notice of the invalidity of the note; that said cause was tried the 30th day of November, 1927, and resulted in a judgment in Cooper's favor, which judgment is still in full force and effect: that immediately upon the levy of the writ of attachment, he informed the bank that the crops levied upon were a part of his homestead, not subject to process, and demanded that the writ be released, especially as to all crops except the wheat; that the bank refused to release the lien, so that plaintiff could harvest and save his crops, until after November 11, 1927; that in an attempt to have the attachment lien released, he made two trips to the town of Lubbock, about 50 miles away, at the reasonable and necessary expense and loss of time of $100 for each trip; that he necessarily telephoned the defendant bank at an expense of $2.95, and upon another occasion at the necessary expense of $1.20; that he made one trip to Levelland, about 35 miles distant, in an effort to get the attachment lien released, at a reasonable expense of $10; that he was delayed more than two weeks in beginning his harvest, and but for such attachment he would have commenced and completed harvesting his crops at least two weeks earlier; that by reason of the delays, he was injured, by decline in the actual market value of his crops, as follows: One bale of cotton wasted by being blown and falling out and ruined, of the market value of $110; damages to 15,000 bundles of feed by being frozen before harvest, to the extent of one cent per bundle, $150; 15 tons of maize heads, by reason of exposure to the weather, damaged to the extent of $1 per ton, $15—none of which damages would have occurred but for the refusal of the bank to release the attachment lien upon said property. That he was forced to employ an attorney to represent him in said case for the sum of $250, which is a reasonable and necessary expense; that because of the levy he was not able to borrow money to hire laborers to save his crops, which he could have done but for the levy, and that by such acts the bank had injured his credit so that he was wholly unable to negotiate a loan for that purpose, and that his credit and reputation for paying his just debts has been injured to the extent of $1,000;

that such illegal levy was made with full knowledge of all the facts, and such action was taken willfully and with reckless disregard of his rights, and in making the levy the defendants acted with malice and intent to injure him and his credit; that they knew prior to and at the time of the levy that the maize, corn, cotton, and higera were a part of his homestead, and the writ was sued out without grounds to believe that the facts alleged in the affidavit were true. He charges no malice upon the part of the sheriff, but because of the malice of the other defendant, he sued for exemplary damages in the sum of $5,000.

The defendants answered by general demurrer, eight special exceptions, general denial, and specially allege that the original suit was filed upon a claim which they then considered good and valid debt against the plaintiff, and which they still believe to be a good claim due the bank; that prior to the filing of said suit, plaintiff told the bank officers and attorney that he would not pay the note and would see that the bank did not get a cent of the money and would not himself spend any money to keep from paying said note; that said statements and others to the same effect, together with his conduct, led the defendant bank and its officers to believe that he was about to dispose of his property to prevent said bank from collecting its debt; that said Hilburn, believing that Cooper was going to convey his property in order to avoid having it subjected to the payment of the debt due the bank, made the affidavit for the writ, and in doing so acted in good faith, believing that plaintiff was justly indebted to the bank and was about to dispose of his property for the purpose of defrauding his creditors; that he acted without malice and without any intent to injure the plaintiff or his credit; that the other defendants, in signing said bonds, acted in good faith, without any malice or intent to injure plaintiff or his credit; that the said writ was levied upon the 400 acres of land in the statutory manner; that the sheriff, in making said levy, did not take the land, improvements, or crops thereon into possession, and did not in any manner disturb plaintiff's possession thereof; that plaintiff was never at any time prevented from caring for, cultivating, or marketing his crops; that neither said bank nor any of the defendants ever at any time claimed the growing crops on the premises or any part thereof, but at all times recognized the right of plaintiff to harvest and sell said crops, and told the plaintiff and those who were acting for him that he was entitled to retain possession of said crops, and free from interference from the defendants or any of them.

The case was tried by the court without the intervention of a jury, and resulted in a judgment in favor of plaintiff for $260 actual damages and $750 exemplary damages against

the bank, and that he take nothing as to any of the other defendants.

The trial judge filed his findings, and the material facts are stated, briefly, as follows: The bank caused the writ of attachment to be issued and levied upon Cooper's homestead on which there were crops maturing and matured, consisting of 30 acres of cotton, 60 acres of higera, and 30 acres of maize; that by reason of the levy he was prevented from caring for his crops, and a freeze came and injured them; wind blew out his cotton so that he lost a bale of the value of $110; that his bundle stuff was damaged $150 and maize heads damaged $15; that he incurred various expenses in attempting to get his crops released from the attachment and spent $250 attorney's fees; that he was unable to use his crops as security to borrow money to pay for harvesting, and his credit was injured by the levy of the writ; that the writ was sued out without probable cause and with malice; that the affidavit for the attachment was made by the bank's officer at a time when it had complete knowledge that the note sued upon was illegal; that the attachment was sued out for the purpose of forcing a settlement and without belief that the bank could recover upon the note; that Cooper's reputation for paying debts was good; that he sought to get his crops released so he could borrow money, and would have been able to borrow it, for the purpose of harvesting his crops, except for the fact that the bank refused to make a written statement that the crops might be pledged for harvesting expenses; that if the writ had not been levied, Cooper could have continued to harvest his crops and would have saved them and would not have suffered the damages thereto; that his credit was injured and that the bank should respond in actual and exemplary damages; that the attachment was sued out and levied in a reckless and willful disregard of Cooper's rights and with intention to injure him for the purpose of extorting money upon an illegal obligation, which is tantamount to malice in law. The court further found that the other defendants were not liable for any damages.

In disposing of this appeal, it will not be necessary for us to consider the several propositions in detail. It is insisted in the main that the general demurrer should have been sustained to the petition. We will not pass upon that question, but will consider the points urged in the light of the statement of facts and upon the whole record.

█ The uncontroverted testimony of Cooper shows that all of the crops, which he claims were damaged, were growing on the 200 acres of the 400 acres levied upon which constitute his homestead. No damages are asked because of the levy upon the remaining 200 acres on which only a small portion of the wheat crop was growing, so it will be necessary for us to discuss only the claims for damages as they relate to his homestead. In

the case of Trawick v. Martin-Brown Co., 79 Tex. 460, 14 S. W. 564, the Supreme Court holds that in an action for wrongful and malicious suing out of an attachment where an ordinary levy of the writ has been made upon land, no suit can be maintained for either actual or exemplary damages. It is further held that such a levy upon a homestead is a nullity, as it neither disturbs the owner's possession nor affects his rights. To the same effect are the following cases: Inge et al. v. Cain, 65 Tex. 75; Girard v. Moore (Tex. Civ. App.) 24 S. W. 652; Holland v. Zilliox, 38 Tex. Civ. App. 416, 86 S. W. 36; Sturgis v. Govatos (Tex. Civ. App.) 237 S. W. 303; Oscar v. Sackville (Tex. Civ. App.) 270 S. W. 897. Such a levy creates no lien upon the homestead or other exempted property. Willis v. Mike, 76 Tex. 82, 13 S. W. 58; Tobar v. Losano, 6 Tex. Civ. App. 698, 25 S. W. 973. As shown by the officer's return upon the writ, no specific levy was made upon the crops. The land only is described as the property levied upon. The sheriff executed the writ by going out to Cooper's farm and delivering a copy of the writ to him and by filing a copy in the clerk's office. He exercised no dominion over the land or crops and took nothing into possession. It is insisted by appellee that because ungathered crops are a part of the realty, the levy upon the land was also a levy upon the crops; but it is apparent from the whole of the record that the sheriff was not instructed to levy upon anything but the land, and since he made no attempt to gather the crops or sell them in their ungathered condition, it is clear that his levy was limited to the land itself. The recital in an officer's return with reference to the property levied upon is prima facie evidence of the facts stated. Manghue v. Reaney, 99 Conn. 662, 122 A. 566. And the recital in the return is as a general rule conclusive as to parties to the writ and those claiming under them. Landers v. Moore, 214 Ala. 20, 106 So. 225. The lien extends only to the property mentioned in the writ. Lacy v. Moore, 6 Cold. (Tenn.) 348.

■ Ungathered crops on a homestead, being a part of the realty, are also within the exemption, and a levy upon them is void. Alexander v. Holt, 59 Tex. 205; Allen v. Ashburn, 27 Tex. Civ. App. 239, 65 S. W. 45; Stagg's Heirs v. Piland, 31 Tex. Civ. App. 245, 71 S. W. 762; Stephens v. Cox (Tex. Civ. App.) 255 S. W. 241; Cry v. Bass Hardware Co. (Tex. Civ. App.) 273 S. W. 347. Unless the officer commits a trespass and takes possession of the land for the purpose of gathering the crops or sells the crops in an ungathered state, the levy is insufficient and no lien is created. Moore v. Graham, 29 Tex. Civ. App. 235, 69 S. W. 200; Coates v. Caldwell, 71 Tex. 19, 8 S. W. 922, 10 Am. St. Rep. 725; Phillips v. Warner (Tex. App.) 16 S. W. 424; Ross v. McGuffin, 2 Wilson Civ. Cas. Ct. App. 404; Cunningham v. Coyle, 2 Wilson Civ. Cas. Ct. App. 373. It is clear from the record that the crops were never, in fact, in custodia legis. "In custodia legis, is that custody only which an officer has the right to assume over property by virtue of legal process and the term involves the actual domination over some objective thing by the Court." 31 C. J, 357. Curtis v. Ford, 78 Tex. 262, 14 S. W. 614, 10 L. R. A. 529. Cooper had the right at any time to gather his crops, and, so far as the record shows, neither the sheriff nor any one else attempted to keep him from doing so. It appears from his conduct that he was under the impression that the crops were levied upon, as he made an effort to get the bank to release the attachment lien upon the crops so they could be harvested. The testimony is conflicting upon this point, but in our opinion it is immaterial. Cooper is presumed to know the law, and it follows that he knew that he was at liberty to gather his crops at any time. There was no lien upon the land and none upon the unsevered crops, and the fact that Cooper is mistaken in the extent of his legal rights and acted under a misapprehension does not place him in a better position by reason of that fact. Under the rules of law, he therefore was not entitled to recover for the loss of the bale of cotton, damages to his bundles of feed, and to the 15 tons of maize. His failure to gather them in time is the proximate cause of such damages, and his mistaken idea as to his rights cannot be made a basis for an action against appellants.

■ Loss of credit is an element of exemplary rather than actual damages. Mayer v. Duke, 72 Tex. 445, 10 S. W. 565; Trawick v. Martin-Brown, supra. This is also true of attorney's fees. Strauss v. Dundon (Tex. Civ. App.) 27 S. W. 503. Cooper also sued for expenses in going to Lubbock and Levelland and in telephoning the bank with reference to the levy. Costs and expenses of this nature are also classed as exemplary damages. Graddock v. Goodwin, 54 Tex. 578; Harris v. Finberg, 46 Tex. 79; Smith v. Jones, 11 Tex. Civ. App. 18, 31 S. W. 307.

■ For the reasons above stated, appellee could not maintain an action for actual damages, and it is a fundamental rule that, where actual damages are not shown, exemplary damages cannot be awarded. The judgment is reversed and here rendered for the appellants.

Reversed and rendered.