**BEAURLINE et al. v. SINCLAIR REFINING CO.**

No. 11542.

Court of Civil Appeals of Texas. San Antonio.

Dec. 19, 1945.

Rehearing Denied Jan. 16, 1946.

Greer & Cox, of McAllen, and Hardin & Hardin, of Edinburg, for appellants.

Kelley & Looney, of Edinburg, Hill & Franki, of Mission, and Ralph T. Rawlins, of Edinburg, for appellee.

MURRAY, Justice.

This suit, after the consolidation of two suits in the District Court of Hidalgo County, became a suit by A. W. Beaurline and Company (a partnership composed of a number of persons not necessary to here name), Ralph Pratt and M. A. Carlson, against Sinclair Refining Company, a corporation, wherein it was sought to recover damages for a wrongful levy and conversion of cotton belonging to Ralph Pratt as tenant, A. W. Beaurline and Company as landlord owning one-fourth interest, and M. A. Carlson as mortgagee of Ralph Pratt. When plaintiffs rested, the defendant made a motion for an instructed verdict, which was granted by the court and judgment entered that plaintiffs take nothing.

From this judgment A. W. Beaurline and Company, Ralph Pratt and M. A. Carlson have prosecuted this appeal.

The trial court seems to have based the instructed verdict upon a finding, as a matter of law, that there was no legal levy upon the four or five hundred acres of matured cotton. Unquestionably, if there was no legally sufficient levy upon the ungathered cotton appellants could not recover, because the entire cause of action necessarily rests upon the theory that Ralph Pratt, the tenant, was deprived of his possession of the cotton by reason of a legal levy upon it by the Sheriff, or rather by a Deputy Sheriff of Hidalgo County.

The facts relating to the question of levy vel non are as follows: The Sinclair Refining Company had obtained a judgment against Ralph Pratt in the sum of $364.76 and $9.55 court costs, in the 92d District Court of Hidalgo County, in a cause num-

bered A-5940. Nat Pace, acting as attorney of Sinclair Refining Company caused a pluries execution to be issued in said cause on July 6, 1944, returnable within sixty days. Pace delivered this execution to E. E. Vickers, Chief Deputy Sheriff of Hidalgo County, requesting that a levy be made pursuant thereto on property of Ralph Pratt. Vickers demanded an Indemnity Bond, which was furnished on August 12, 1944, and also demanded that Pace point out the property to be levied upon, whereupon Pace furnished a description of some land in Hidalgo County. The execution was handed to one Lysinger, another Deputy Sheriff, who was told to make the levy. Pace went along with Lysinger to locate the property. They went sixteen miles north and three miles west to Pratt's house. Pratt was not at home but his wife was there. Lysinger told her that he was levying on Pratt's cotton and for her to tell him to do nothing further about the cotton. They then went out to look for Pratt's cotton and found lots of cotton. They drove around on the roads for some thirty or forty minutes and then went back to Edinburg. Lysinger then made the following return on the execution:

"Sheriff's Return

"Came to hand this 6th day of July, 1944, at 3:10 o'clock P. M. and executed the 12th day of August, 1944, at 4 o'clock P. M. by levying on the following described property as the property of the defendant.

"Approximately Five Hundred (500) acres of land out of what is known as Retama Pasture described by metes and bounds, as follows:

"Beginning at a point in the south line of the Retama Pasture on the Monte Christo Road and on the west line of old caliche; thence following the West line of said old caliche road northerly approximately one mile to the north line of road running west from Government target for the place of beginning; thence westerly along North side of said road to a point fifty feet east of west line of Retama Pasture; thence northerly parallel with the west line of Retama Pasture to a point thirty feet south of a 640 acre brush tract of land; thence easterly parallel with south line of said brush land tract to a point thirty feet east of the east line of said brush land tract; thence northerly parallel to the east line of said brush land tract to a fence; thence easterly to road inside of east fence of caliche land; thence southerly to north side of road running west from house; thence westerly to point on the west line of caliche road; thence southerly following road to place of beginning; including two most easterly houses at windmill in their present state of repair;

"I actually and necessarily traveled 40 miles in the service of this writ.
"Fee      1.50
"Mileage  3.00
        ————
         4.50
                    "R. T. Daniel
          "Sheriff Hidalgo County, Texas."

The next morning Pace got Pratt on the telephone and informed him they had levied upon all of his cotton north of the targets and that he should stay off the premises. The first Pratt knew of any levy was when he saw his wife on the night of August 12, 1944. What she told him is not shown.

On or about August 19, 1944, Vickers informed Pace that he was not going to pick the cotton, and suggested that Pace contact some gin companies that had cotton picking crews that they might agree to pick the cotton. About this time Pratt picked three bales of cotton from land that was south of the targets. Pratt had rented two tracts of land from Beaurline and Company, one tract by a direct lease and another tract by buying out one Cone, who had leased from Beaurline and Company. The discription furnished Vickers and set forth in the Sheriff's Return was of the tract leased directly to Pratt and did not include the Cone lease. The execution became functus officio on September 4, 1944, by its own terms.

On September 7, 1944, Pace wrote M. A. Carlson the following letter:
"Mr. M. A. Carlson
    "Donna, Texas
"Dear Mr. Carlson:

"This will be formal notice to you that we have attached and levied execution upon the cotton in Retama Pature owned by Ralph Pratt over which you hold a mortgage dated October, 1943, in the amount of $4,822.80.

"Under the laws of the State of Texas, we are entitled to levy upon this cotton unless you point out to us other property owned by Ralph Pratt which is not subject to a mortgage.

"In view of this law we request that you contact us immediately in order that your interest in this cotton may be fully protected.

"We believe that some sort of a deal can be worked out on this matter, and would appreciate your cooperation in this regard.

"Yours very truly,
"Kelley & Looney
"By Nat Pace, Jr."

On September 9, 1944, Pace received the following reply to his letter written by Hardin and Hardin, as attorneys. for M. A. Carlson:

"Dear Mr. Pace:

"Your letter dated September 7 and addressed to Mr. M. A. Carlson, Donna Texas, has been placed in our hands for reply.

"You are advised that Mr. Carlson does not know of any other property owned by Ralph Pratt which is not subject to a mortgage, and does not know of any other property owned by Ralph Pratt that is subject to a mortgage, but he does know that the cotton crop in the Retama Pasture, which has been seized by Sinclair Refining Company, is subject to a mortgage in the sum of $4822.80.

"In view of the fact that Mr. Carlson's mortgage was of record long prior to the time Sinclair Refining Company obtained its judgment against Ralph Pratt, the seizure of such cotton crop, and the gross neglect of the same until it has been largely destroyed by storms and rain; puts Mr. Carlson in a position to collect his debt from Sinclair Refining Company.

"Therefore, unless your client will make a reasonable settlement with Mr. Carlson, it will be necessary that we bring suit against the Sinclair Refining Company during the course of the next few days.

"Yours very truly,
"Hardin & Hardin"

On September 23, 1944, the following letter was written by Vickers, copies of which were delivered to appellants:

"Mr. Ralph Pratt
"Edinburg, Texas

"This is to inform you that the levy heretofore made by me on crops on the following described land, to-wit:

"Approximately five hundred (500) acres of land out of what is known as Retama Pasture described by metes and bounds, as follows: (Description of land same as in Sheriff's Return copied above) has been

completed and you and the owner of the land are at liberty at any time to take full control thereof.

"This notice is given you at this time in order that there may be no question about your right to plow up the stalks on the land.

"R. T. Daniel, Sheriff of Hidalgo County, Texas
"By (Signed) E. E. Vickers."

The land described in this letter was the same as that described in the sheriff's return and did not include the Cone lease. Only about 140 acres of the land described was planted in cotton.

Pratt went to the court house to inquire about the levy but only talked to some "Mexicans" in the sheriff's office. No one else was in the sheriff's office at the time. Originally appellants predicated liability upon the ground that the levy was made upon ungathered cotton grown on his homestead, but this ground was abandoned, and appellants now predicate liability upon the ground that the levy was on four or five hundred acres of ungathered cotton and was therefore an excessive levy.

We are of the opinion that the facts do not shown a legally sufficient levy on the ungathered cotton of Pratt. It is conceded that the pluries execution was properly issued upon a valid judgment and that the sheriff could properly levy upon sufficient property belonging to Ralph Pratt to satisfy the amount due in cause number A-5940.

Rule 639, Texas Rules of Civil Procedure, and Art. 3799, Vernon's Ann. Civ.Stats., require that an officer making a levy upon personal property must take possession thereof. Osborn v. Paul, Tex.Civ. App., 27 S.W.2d 572. There is what may be termed an exception to this rule, to the effect that where a levy is made on property of great bulk, weight and immobility, which is so cumbersome that it may not be moved except at large expense and effort, it is sufficient if the officer goes upon the premises, points out the property, asserts dominion over it and forbids its removal by the person against whom the writ has been issued. Smith v. Harvey, Tex. Civ.App., 104 S.W.2d 938. The officer in making a levy on such property must do some act which would constitute a trespass except for the immunity furnished him by the writ. In 27 Tex.Jur. p. 484, Sec. 21, with reference to making a levy upon personal property, it is said: "* * * he

must do some act for which he could be successfully prosecuted as a trespasser if it were not for the protection afforded him by the writ." Cited in support of this text is Freiberg v. Johnson, 71 Tex. 558, 9 S. W. 455; Portis v. Parker, 8 Tex. 23, 58 Am.Dec. 95; Bryan v. Bridge, 6 Tex. 137; Burch v. Mounts, Tex.Civ.App., 185 S.W. 889; Jones & Nixon v. Bank, Tex.Civ. App., 140 S.W. 116, affirmed, 106 Tex. 572, 173 S.W. 202.

■ The evidence does not show that Lysinger did any act which would have amounted to trespass except for the immunity afforded him by the execution. Notifying Pratt's wife that he was making a levy was insufficient. First Nat. Bank of Littlefield v. Cooper, Tex.Civ.App., 12 S. W.2d 271; Osborn v. Paul, Tex.Civ.App., 27 S.W.2d 572; McCaskill v. Davis, Tex. Civ.App., 134 S.W.2d 738; Western Nat. Bank of Hereford v. Steele, Tex.Civ.App., 36 S.W.2d 271. Simply riding around on the roads where the cotton land was located certainly did not amount to such an act. The fact that the sheriff's department made no effort to get the cotton picked and thereby reduce it to actual possession emphasizes the fact that there was no levy accomplished. In Coates v. Caldwell, 71 Tex. 19, 8 S.W. 922, 923, 10 Am.St.Rep. 725, Justice Gaines, speaking for the Supreme Court, said:

"Upon a levy upon such property the officer must either take possession of the land to gather the crop or must sell it ungathered. In the latter case, the right would pass to the purchaser at the sale to go upon the land and take off the crop. In order to complete a sale or to make it effective, possession must be taken of the land upon which the crop is found, and for a time at least the officer or purchaser must exercise dominion and control over it. This, in our opinion, is an invasion of the homestead right, and cannot be permitted."

This decision has been followed in many cases and under this holding attempted levies on growing crops on homesteads have been held to be null and void.

In the case at bar neither the sheriff nor his deputies made any effort to advertise or sell the cotton in its ungathered condition. They did not place a guard over the field, nor did they place any signs there to indicate the cotton was in the custody of the sheriff. The trial court did not err in granting the motion for a peremptory instruction upon the theory that there had not been a legally sufficient levy by the sheriff or his deputies upon Pratt's ungathered cotton.

■ As stated before, the only reason relied upon by appellants to show that the alleged levy was wrongful is that it was excessive. If the evidence should be regarded as showing any character of a levy it would necessarily be confined to the cotton described by metes and bounds in the sheriff's return. On this land there was only 140 acres of cotton planted, which produced one-half bale to the acre, or only seventy-two bales, at $110 per bale, and after paying the ginning, including the sale price of the seed, would have brought $7,920. The cost of picking the cotton, at $22.50 per bale, would be $1,620, thus leaving net proceeds of $6,300, less $1,575, the landlord's one-fourth, you have $4,725, which would not be sufficient to discharge the amount of principal and interest due Carlson on his note secured by mortgage upon this cotton. There was no prayer for reformation of the sheriff's return and it was therefore binding upon Pratt. Citizens State Bank of Clarinda v. Del Tex. Inv. Co., Tex.Civ.App., 123 S.W.2d 450; Flanniken v. Neal, 67 Tex. 629, 4 S.W. 212; First Nat. Bank of Littlefield v. Cooper, Tex.Civ.App., 12 S.W.2d 271.

■ The return recites the levy was made upon land, for which no damage could be claimed, but even if it be construed as meaning that the levy was made upon the ungathered cotton growing on the land, the levy, as above pointed out, would not as a matter of law be excessive.

■ Appellants contend that the letter written by Deputy Sheriff Vickers, on September 23, 1944, in effect stating that the levy theretofore made was thereby released, should be regarded as a part of the sheriff's return in cause No. A–5940. We cannot agree. This letter was not filed in cause No. A–5940; it in no way purports to be a part of the sheriff's return in cause No. A–5940. There is no pleading of ambiguity and incompleteness of the sheriff's return in cause No. A–5940.

Pratt gathered three bales of cotton from a part of the crop on which he considered no levy had been made. There is nothing to show just what cotton was levied upon and what was not, unless it is disclosed by the sheriff's return.

The judgment is affirmed.