Evadine R. MEAD, Petitioner,

v.

The JOHNSON GROUP, INC., et
al., Respondents.

No. B–9900.

Supreme Court of Texas.

April 29, 1981.

Rehearing Denied June 10, 1981.

Milner & Smith, Joe D. Milner, Jr., John F. Hamje, III and Peter R. Meeker, Austin, for petitioner.

Bartram, Reagan, Burrus & Dierksen, Charles Blackley, New Braunfels, Fisher & Cook, Guy Fisher, Austin, for respondents.

DENTON, Justice.

This is a suit to recover damages for breach of contract. The trial court rendered judgment that the plaintiff recover damages for the defendants' failure to pay certain business loans and debts and for injury to the plaintiff's credit reputation. The court of civil appeals reformed the judgment of the trial court and affirmed. 605 S.W.2d 386. We affirm in part, and reverse and render in part the judgment of the court of civil appeals.

Evadine Mead, plaintiff, was formerly the owner of Century 21/Associated Real Estate in Austin, Texas. On December 19, 1975, she entered into a written contract with John W. "Bull" Johnson and The Johnson Group, Inc., defendants, for the sale of her business.[1] Johnson agreed to: 1) pay Mead $3,000.00; 2) assume payment of a Small Business Administration (SBA) loan; 3) pay in full all business and trade-related debts owed by Century 21/Associated Real Estate by March 1, 1976; 4) pay Mead fifty percent commission on all sales which she generated; and, 5) pay Mead a fifteen percent override on all commissions paid to other agents and employees. Mead agreed to: 1) convey to Johnson her interest in all assets of the business; and, 2) continue to work for Johnson for three years from the contract date and not compete within this three-year period. Mead conveyed her interest and Johnson paid her $3,000.00. Mead began to work for Johnson, but was not paid any commissions or overrides. On March 24, 1976, Mead terminated her employment and began to compete with Johnson.

Mead filed suit against Johnson in April 1976 alleging that the defendants had failed to: 1) assume the SBA loan; 2) pay all business and trade-related debts; and, 3) pay commissions and overrides as agreed. Johnson answered and counterclaimed alleging that Mead had breached her employment contract and agreement not to compete. Larson Equipment Company, lessor of the real estate office, intervened to recover unpaid rent.

Trial was before a jury which entered a verdict for the plaintiff. The trial court rendered judgment: 1) denying Johnson's counterclaim on the grounds that no damage occurred because of Mead's breach; 2) awarding Larson Equipment Company $1,600.00 damages against Mead for unpaid rent; and, 3) awarding Mead: a) $3,000.00 damages for injury to her credit reputation, b) $9,733.37 damages for Johnson's failure to assume and pay the balance of the SBA loan, c) $7,420.70 damages for Johnson's failure to pay all business and trade-related debts owed by Century 21/Associated Real Estate on March 1, 1976, d) $1,999.20 for unpaid commissions, e) $232.26 for unpaid overrides, and f) $2,950.00 for attorneys' fees. The judgment ordered Mead to pay the balance due on the SBA loan and the unpaid creditors of Century 21/Associated Real Estate if, and only if, she recovers the judgment against Johnson. In the event Mead is paid by Johnson the trial court further directed that she indemnify Johnson for such payment.

The court of civil appeals reformed the judgment of the trial court and affirmed. The court deleted the award of damages for loss of credit, for failure to assume the SBA loan, for failure to pay business and trade-related debts, and the order that Mead conditionally pay the loan and debts. The court further reformed the judgment to award Mead recovery over against Johnson for the rent owed to Larson Equipment Company.

---

1. The defendants will be referred to collectively as "Johnson."

The court of civil appeals held, as a matter of law that actual damages are not recoverable for loss of credit. We disagree.

■ In an action for breach of contract, actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct. *E. g., Texas P. Ry. Co. v. Nicholson*, 61 Tex. 491, 496 (1884); *Jones v. George*, 61 Tex. 345, 354–355 (1884); *Humble Oil & Refining Co. v. Wood*, 292 S.W. 200, 201 (Tex. Comm'n App.1927). The leading case on foreseeability of contract damages is *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854) in which the English court wrote:

> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach.

This is the rule in the majority of American jurisdictions and is recognized by the Restatement (Second) of Contracts.[2] Restatement (Second) of Contracts § 365 (Tent. Draft No. 14, 1979); *see* 5 Corbin, Contracts § 1007 (1964).

Prior Texas cases have held that loss of credit or injury to credit reputation is too speculative or remote to constitute an element of actual damages. In *Trawick v. Martin-Brown Co.*, 79 Tex. 460, 14 S.W. 564, 566 (1890), this court wrote that loss of credit may be considered in determining exemplary damages, but not actual damages. *See Wallace v. Finberg*, 46 Tex. 35, 47 (1876). *Trawick* was a tort action for wrongful attachment in which the court determined the plaintiff's loss of credit was too speculative or remote to constitute an element of actual damages. *Trawick v. Martin-Brown Co. supra*, 14 S.W. at 566. There are several other cases on wrongful attachment which have denied recovery of actual damages for loss of credit relying on *Trawick. Kauffman v. Armstrong*, 74 Tex. 65, 11 S.W. 1048, 1049 (1889); *Security State Bank & Trust v. Craighead*, 440 S.W.2d 701, 710 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); *First Nat. Bank of Littlefield v. Cooper*, 12 S.W.2d 271, 274 (Tex.Civ.App.—Amarillo 1928, writ ref'd). *See also Mayer v. Duke*, 72 Tex. 445, 10 S.W. 565, 569 (1889); *Wallace v. Finberg, supra* at 47. The only contract case involving loss of credit is *Sterling Projects, Inc. v. Fields*, 530 S.W.2d 602 (Tex.Civ.App.— Waco 1975, no writ). This was a suit for breach of a construction contract in which a subcontractor sought to recover damages from the general contractor for loss of credit and business reputation. The court of civil appeals, in reliance on the wrongful attachment cases noted above, held that loss of credit was not recoverable as actual damages. *Id.* at 605.

■ The Uniform Commercial Code allows recovery of actual damages for loss of credit resulting from wrongful dishonor of a check. Tex.Bus. & Com.Code Ann. § 4.402, Comment 3 (UCC). Under section 4.402, a bank's liability is limited to actual damages proved when dishonor occurs through the bank's mistake. *Id.* Actual damages may include consequential damages such as for loss of credit. *Id.; see*

---

2. § 365. UNFORESEEABILITY AND RELATED LIMITATIONS ON DAMAGES.

(1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.

(2) Loss may be foreseeable as a probable result of a breach because it follows from the breach

(a) in the ordinary course of events, or

(b) as a consequence of general or particular requirements of the other party that the party in breach had reason to know.

(3) Even if the party in breach had reason to foresee the loss as a probable result of his breach when the contract was made, a court may limit damages by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise if it concludes that in the circumstances justice so requires.

*First Nat. Bank of Bellaire v. Hubbs*, 566 S.W.2d 375, 378 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Northshore Bank v. Palmer*, 525 S.W.2d 718, 720 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.). *But cf. State Nat. Bank of Iowa Park v. Rogers*, 89 S.W.2d 825, 826 (Tex.Civ. App.—Fort Worth 1936, no writ) (pre— UCC case). Comment 2 to section 4.402 describes the liability of the bank as sounding both in contract and in tort.

The rule of *Wallace v. Finberg, supra* and *Trawick v. Martin-Brown Co., supra*, is not an absolute bar to recovery of actual damages for loss of credit resulting from breach of contract. The prior cases held that loss of credit was too speculative or remote to be an element of actual damages. Before the Great Depression of the 1930's, most commercial transactions were for cash. Since then, use of consumer credit has increased tremendously. Today, very few major purchases are transacted in cash; but rather, reliance upon long-term mortgages, installment contracts, charge accounts, and credit cards is commonplace. Good credit rating is essential in today's economy.

The 1980 Supplement to Corbin on Contracts states "there is no good reason why damage to credit rating should not be compensable in contract." 2 Corbin, Contracts § 1007 (Kaufman Supp.1980). Recognition that loss of credit may be a foreseeable result of breach of contract is in line with the realities of today's economy. To recover for loss of credit, as with any element of contract damage, it must be proved that the injury was the natural, probable, and foreseeable consequence of the breach of contract or there are no actual damages. *See Hadley v. Baxendale, supra*, at 354; Restatement (Second) of Contracts § 365 (Tent. Draft 1979). This is not a departure from the general rule of contract damages, but only recognition of an element of damages if proven. We hold that actual damages for loss of credit or injury to credit reputation in an action for breach of contract may be recovered when there is evidence that loss of credit was a natural, probable, and foreseeable consequence of the defendant's breach.

The jury found that Johnson's failure to assume the SBA loan and to pay the trade and business-related debts of Century 21/Associated Real Estate was the proximate cause of Mead's loss of credit. Johnson contends there is no evidence to support the jury finding of proximate cause. In deciding a "no evidence" point, which is a question of law, we consider only that evidence and reasonable inferences therefrom which viewed in its most favorable light supports the jury finding and we must reject all evidence or inferences contrary to the finding. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex.1980); *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 467 (Tex.1970); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). The record indicates that after March 24, 1976, Mead was refused a loan at Oak Hill National Bank, lost her credit with Exxon, had her account closed at several stores including J. C. Penney's, Sears, Montgomery Wards, and Yarings. She was also denied credit by Master Charge, BankAmericard, Carte Blanc, Waterloo Leasing, Lamar Leasing, Joske's, Handy Dan, and Bank of Austin. When viewed in its most favorable light, this is some evidence to support the jury finding of proximate cause. We accordingly hold that the trial court correctly awarded Mead actual damages for loss of credit.

The court of civil appeals held that Mead could acquire a right of action against Johnson for the balance of the SBA loan and the business and trade-related debts assumed by the defendants only by first paying the loan and debts. We disagree.

In so holding, the court followed the rule announced in *Gunst v. Pelham*, 74 Tex. 586, 12 S.W. 233, 234 (1889), a case involving a mortgage on real property. In *Gunst*, Johnson purchased a tract of land from Pelham assuming an existing indebtedness. He conveyed the land to Gunst who later defaulted. Pelham sued Johnson and Gunst. This court held that Johnson was primarily liable on the mortgage and Pelham could acquire a right of action against

Johnson only by first paying the mortgage. *Id.* 12 S.W. at 233. *Accord Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158, 159 (1944); *French v. May*, 484 S.W.2d 420, 424 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). The *Gunst* rule also has been applied to actions for breach of indemnity contracts. A party complaining of breach of an indemnity contract must pay the debt in controversy before he is entitled to recover from a breaching surety. *Latimer v. Texas & N. O. Ry. Co.*, 56 S.W.2d 933, 935 (Tex. Civ.App.—Beaumont 1933, writ ref'd); *Meier v. Service Corp. of the Nat. Ass'n of Credit Men*, 129 S.W.2d 690, 692 (Tex.Civ. App.—Dallas 1939, writ dism'd judgmt. cor.); *First State Bank of Pardise v. Wallace*, 161 S.W. 957, 959 (Tex.Civ.App.—Fort Worth 1913, writ ref'd).

■ The present case involves neither a mortgage nor an indemnity contract, but rather a contract for the sale of a business. This court has written, albeit dictum, that in a suit to recover damages on a written contract the promisee is not required first to pay the debt in order to maintain the cause of action. *Smith v. Nesbitt*, 111 Tex. 186, 230 S.W. 976, 977–978 (1921). In a suit similar to the instant case involving the sale of business and assumption of existing debts, it was held the contract created a direct obligation from the promisor to the promisee and did not require that the promisee first pay the debts in order to recover. *Cohen v. Simpson*, 32 S.W. 59, 61 (Tex.Civ. App. 1895, writ dism'd). *See also Smith v. Smith*, 595 S.W.2d 631, 632 (Tex.Civ.App.—Fort Worth 1980, no writ). There are other cases in which Texas courts have permitted recovery for expenses incurred without first requiring payment by the plaintiff. *See, e. g., Triton Oil & Gas Corp. v. E. W. Moran Drilling Co.*, 509 S.W.2d 678, 686 (Tex.Civ. App.—Fort Worth 1974, writ ref'd n. r. e.) (materials and services in drilling contract); *Taylor v. Mark*, 376 S.W.2d 927, 928 (Tex. Civ.App.—Waco 1964, writ ref'd n. r. e.) (materials in a construction contract); *San Antonio & A. P. Ry. Co. v. Moore*, 31 Tex. Civ.App. 371, 72 S.W. 226, 228 (1903, writ ref'd) (medical expenses). This court noted in *Smith v. Nesbitt, supra*, 230 S.W. at 978,

that proper orders directing the promisee to apply the recovery to payment of the debt would prevent double recovery. Here, the trial court so ordered. Johnson received valuable assets from Mead from which he has profited. He breached the contract, yet is relieved of the obligation to perform that which he agreed to do—pay the SBA loan and business debts. To permit this result is inequitable and allows Johnson to be unjustly enriched. We hold that Mead is not required first to pay the loan and debts assumed under the contract.

■ Johnson urges several other points by way of conditional application. First, he contends the court of civil appeals erred in holding Mead could recover the amount of unpaid rent owing to Larson Equipment Company. The courts properly allowed this recovery for the same reason we held that Mead could recover the balance of the loan and debts. Second, Johnson argues that it was error to award Mead commissions and overrides because her breach excused performance by the defendants. The record indicates that Johnson breached the contract to pay the balance of the loan and debts on March 1, 1976. Mead was in compliance with the contract until March 24, 1976. A party in default on a contract is not relieved by a subsequent breach by the other party. *Whittenburg v. Groves*, 208 S.W. 901, 904 (Tex.Comm'n App. 1919, judgmt. adopted). Default by one party excuses performance by the other party. *See, e. g., Glass v. Anderson*, 596 S.W.2d 507, 511 (Tex.1980); *Lewis v. River Oaks Capital Corp.*, 466 S.W.2d 348, 352 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.); *Battles v. Adams*, 415 S.W.2d 479, 484 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). Third, Johnson contends it was error to award Mead attorneys' fees. The award of attorneys' fees was proper. Article 2226, Tex.Rev.Civ.Stat. Ann., permits recovery of attorneys' fees in suits founded upon written contracts. Johnson's conditional points of error are overruled.

The judgment of the court of civil appeals is reversed insofar as it denied recovery of actual damages for loss of credit and judgment is rendered that Mead recover for loss of credit in accordance with the judgment of the trial court. That portion of the judgment of the court of civil appeals denying Mead recovery for the balance of the SBA loan and the business and trade-related debts is reversed. Judgment is rendered for Mead against Johnson for the balance of the SBA loan and the amount of the trade and business-related debts, and if paid, Johnson is entitled to indemnity for the amount paid. In all other respects, the judgment of the court of civil appeals is affirmed.