Yale IZAKS, Appellant,

v.

The NATIONAL BANK OF COMMERCE, Appellee.

No. 967.

Court of Civil Appeals of Texas, Tyler.

Feb. 4, 1977.

Larry B. Bach, Greenberg & Bach, Dallas, for appellant.

Joe B. Harrison, Wynne & Jaffe, Dallas, for appellee.

MOORE, Justice.

Plaintiff, Yale Izaks, brought suit against defendant, National Bank of Commerce (NBC), for conversion and as grounds for a cause of action alleged that the bank wrongfully accepted certain funds from one of its customers knowing that Izaks owned an interest therein to the extent of $34,-500.00 and thereby deprived him of the use and benefits of such funds. In the alternative, he alleged that he was the holder of a security interest in the funds and sought a foreclosure. The bank answered with a general denial and specially denied that the funds in question were subject to the security interest claimed by Izaks. The bank also filed a cross-action seeking judgment over and against Izaks for usurious interest received by him in connection with the transaction and for attorneys' fees. Trial was held before a jury. Thereafter, Izaks made a motion for judgment on the verdict. The bank made a motion to disregard the jury's findings on certain special issues and moved for judgment on the ground that the findings were immaterial. The trial court entered a take-nothing judgment against Izaks and likewise entered a take-nothing judgment against the bank on its cross-action. Both parties gave notice of appeal. The parties may be referred to hereinafter as they appeared in the trial court.

We affirm.

In order to understand the issues involved, a statement is necessary. The controversy commenced on July 17, 1972, when Fred A. Speaks (Speaks) borrowed the sum of $90,000.00 from Izaks and executed a note therefor to Daniel Brusslan [1] as nominee of Izaks. The note, together with interest in the amount of $2,000.00, was payable on October 8, 1972. As security for the loan, Speaks gave Brusslan a security interest in a contract which he held to purchase a building known as the "Seaco" building. The $90,000.00 note recited as follows: "This note is secured by an assignment of all of the rights and interests of the undersigned, Fred A. Speaks, in and to or in any ways connected with that certain Contract of Sale dated April 3, 1972 between McCasland & Co., Inc., Vergil McCasland and the undersigned, Fred A. Speaks . . . .." On the same date Speaks also executed a separate security agreement reciting that in consideration for the loan "and as security for the payment of the said note, the said Fred A. Speaks hereby grants to Daniel Brusslan a security interest in and to all of his rights and interest" in the contract to purchase the building. It is without dispute that the agreement was never perfected as a secured transaction under the Texas Business and Commerce Code.

At the time of the loan, the Seaco Building had an appraised value in excess of $2,100,000.00, and Speaks had the right to purchase same, under his contract, for approximately $1,800,000.00. It was his intention to secure long-term financing from NBC at the appraised value of $2,100,-000.00, paying the smaller purchase price to McCasland, thereby generating approximately $300,000.00 in excess loan funds, thereby enabling him to pay the $90,000.00 therefrom. It was agreed that the loan would be repaid out of the excess loan funds. Before he could obtain long-term financing, Speaks defaulted on the note. After default Izaks demanded a partial payment in the amount of $57,500.00.

1. Since Izaks is the real party at interest, he will hereinafter be treated as if he were the payee on the note.

Izaks also demanded an additional $5,000.00 penalty for failure to pay the note on time and for his agreement to delay foreclosure. Speaks, being unable to meet this demand for $62,500.00, went to NBC, explained the situation and requested a loan sufficient to satisfy the demands of Izaks. While unwilling to loan the funds to Speaks because of his substantial debts, NBC agreed to loan the $62,500.00 to Izaks if he provided collateral for the loan by assigning NBC the $90,000.00 note he held on Speaks, together with his security interest in Speaks' contract to purchase the Seaco building. Izaks agreed to these terms and the loan was made. It was the understanding between Izaks, NBC and Speaks that if NBC provided the long-term financing to Speaks for the purchase of the Seaco building, and if there were excess loan funds, NBC would take $62,500.00 of such funds and apply the same in payment of the $62,500.00 loan to Izaks. However, there was no understanding or agreement concerning how that $62,500.00 would be repaid to NBC in the event that NBC did not provide the long-term financing to Speaks. It was the understanding of all parties that the payment of the remaining $34,500.00 balance on the note due Izaks was a matter between Izaks and Speaks, not involving NBC. Izaks unequivocally testified that NBC did not promise to pay that portion of the note and made no agreement to withhold such amount from any excess loan funds for the benefit of Izaks in the event the bank financed the purchase of the Seaco building.

NBC finally decided not to make the loan to Speaks because of his financial condition. Speaks then sold the contract to purchase the building to R. Scott Clark, III ("Clark") who, according to the record, had no knowledge of the security agreement between Izaks and Speaks. Thereafter, Clark borrowed approximately $2,100,000.00 from NBC and purchased the building, generating approximately $365,000.00 in excess loan proceeds for Clark's own account. As a result a check was issued for such amount payable to Clark, NBC and Speaks. Clark and Speaks endorsed the check to NBC.

Thereupon the bank took the sum of $62,500.00 and discharged the loan previously made to Izaks. Clark then directed the bank to apply the balance to the payment of another indebtedness which he owed to NBC. It is in these funds that Izaks claims ownership to the extent of the $34,500.00 which remained due on his $90,000.00 from Speaks.

Although the check for excess loan funds was made payable to Clark, NBC and Speaks and was later endorsed by Speaks, there is no evidence showing that Speaks received any of the excess loan funds.

The jury found in response to the following numbered special issues that (1) Izaks and NBC did not agree to release the security agreement made by Speaks securing payment of the $90,000.00 note, (2) NBC had notice of the written security agreement executed by Speaks at the time of the closing of Clark's loan to purchase the building on December 27, 1972, (3) the $90,000.00 note had not been paid on or before December 27, 1972, and (5) R. Scott Clark, III had notice of the written security agreement executed by Speaks to secure payment of the $90,000.00 note. Prior to judgment NBC made a motion to disregard the jury's answers to the foregoing special issues on the ground that there was no evidence to support the findings. While the judgment recites that the court considered the bank's motion to disregard the jury's findings, there is nothing to indicate that the court ruled on the motion. Apparently, the trial court agreed with NBC's motion for judgment on the ground that the jury's verdict was immaterial and for that reason rendered a take-nothing judgment against the plaintiff.

By his first two points of error plaintiff, Izaks, seeks a reversal on the ground that the court erred in rendering a judgment non obstante veredicto because, he contends, there was evidence to support the jury's findings on his cause of action for conversion. In reply, the bank takes the position that none of the special issues relate to the elements of conversion and since the evidence fails to conclusively establish

that Izaks owned the funds allegedly converted by NBC, plaintiff failed to establish a cause of action for conversion. We sustain the bank's contention.

■ In an action for conversion, the plaintiff has the burden of proving the acts relied on as constituting the alleged conversion. See 14 Tex.Jur.2d Conversion sec. 79. Generally speaking, the gist of an action for conversion is the wrongful deprivation of property owned by another. See 14 Tex. Jur.2d sec. 3. In order to recover on the theory of conversion, Izaks had the burden to obtain jury findings or to establish by conclusive evidence that he was the owner of the funds alleged to have been converted. This he failed to do, either by jury findings or by uncontroverted evidence.

In demonstrating that Izaks had no ownership or possessory right to the property allegedly converted ($34,500.00 of the approximate $365,000.00 excess loan proceeds which accrued in favor of Clark as a result of his purchase of the Seaco Building), it is important to examine the theory upon which Izaks claims to have any such ownership rights. Izaks claims that when he loaned Speaks the $90,000.00, it was the intention of the parties that repayment of the loan would be made from the excess loan proceeds accruing to Speaks when he secured long-term financing for the Seaco building. It is undisputed that Speaks failed to obtain a loan and, therefore, he never obtained any excess loan funds. Consequently, Izaks never became the owner of any excess loan funds because Speaks received none and passed none to the bank. In these circumstances it cannot be said that the bank deprived him of funds owned by him.

It was Clark, a stranger to the transaction, who obtained the long-term financing and acquired the Seaco building, and by so doing, created excess loan funds for his own account. Clark is not a party to this suit and did not testify as a witness. Insofar as this record shows he acquired Speaks' contract to purchase the building without knowledge of the written security agreement between Speaks and Izaks and with-

out knowledge of their oral agreement that the note would be paid out of the excess loan funds. In order to have established any possessory or ownership interest in the excess loan funds, Izaks had to rely upon some type of contractual agreement. There was no finding and no evidence that Clark agreed that the $34,500.00 due Izaks would be paid out of the excess loan funds. While Clark, for some unexplained reason, allowed the bank to take out $62,500.00 in payment of Izaks' note to NBC, Clark instructed the bank to apply the remainder to his indebtedness to NBC. The excess loan funds were borrowed by Clark; the deed of trust which secured said note was executed by Clark, not Speaks; and title to the Seaco building was taken in the name of Clark. There is no evidence that NBC agreed to withhold from Clark's excess loan funds the $34,500.00 balance due on the $90,000.00 note. Even if the agreement between Izaks and Speaks amounted to an assignment of the excess loan funds in payment of the $90,000.00 note, that agreement could not reach the excess loan proceeds in the hands of Clark in the absence of any notice thereof or any agreement to be bound thereby. Accordingly, Izaks had no ownership or possessory right to the funds which Clark paid to NBC. It follows, therefore, that NBC, not having taken possession of the funds owned by Izaks, would not be liable for conversion.

■ Under his third point plaintiff contends that the trial court erred in refusing to foreclose his security interest against the excess loan funds transferred to the bank by Clark in payment of his indebtedness. Izaks takes the position that since the jury found that NBC had notice of his written security interest, the bank took the excess loan funds subject thereto. Therefore, he contends that he is entitled to a foreclosure on such funds in the hands of NBC to the extent of the $34,500.00 balance due on his note. He argues that both NBC and Clark had notice of his written security agreement, and that notice of the written agreement was sufficient to put them on notice of the oral agreement between Izaks and

Speaks that the $90,000.00 note would be paid out of the excess loan funds. We think the contention is untenable. First, there is no evidence and no finding that either Clark or NBC had any knowledge of the oral agreement between Speaks and Izaks. Secondly, even though the evidence shows that NBC had knowledge of the written security agreement, we do not believe the written agreement was sufficient to charge NBC with knowledge of the oral agreement. The written agreement did nothing more than give Izaks a right, upon default in the payment of the $90,000.00 note, to take proper steps to foreclose on the contract itself and step into the shoes of Speaks as owner of the contract to purchase. Since the written security agreement contained no language showing that it extended to or covered excess loan proceeds, it was insufficient to charge NBC or Clark with notice of a security interest therein. Tex.Bus. & Com.Code Ann. sec. 9.203(a)(2). While the bank knew that Speaks had promised to repay Izaks' $62,-500.00 note out of excess loan funds, there is no evidence that the bank knew that Speaks had promised to pay the remaining $34,500.00 out of such funds. As to the remaining $34,500.00, both Izaks and Speaks testified that this was a matter between them, and the bank was not involved.

In the absence of any evidence that Clark had notice of the oral agreement between Izaks and Speaks assigning Izaks a security interest in the loan proceeds, and in the absence of any evidence showing that NBC had notice that their oral agreement as to the application of loan proceeds extended to the entire amount, including the $34,500.00 remaining due on the note, it follows that Izaks' alleged $34,500.00 security lien on the loan proceeds was never perfected and NBC was entitled to deal with the funds in the manner directed by Clark without regard to the claim of Izaks. The trial court, therefore, properly refused to order a foreclosure.

■ We agree with the bank's contention that the jury's finding on Special Issues 1, 2, 3 and 5 are not controlling and are imma-terial. Plaintiff's entire case, as we understand it, rests on the oral agreement in which Speaks promised to pay the note out of the excess loan funds and that Clark and NBC had knowledge thereof and became bound thereby. While the jury found, in response to the second and fifth special issues, that Clark and NBC had notice of the written security agreement, these findings are immaterial because knowledge of the written agreement would not constitute notice of the oral agreement. Special Issue No. 3 is immaterial because it was undisputed that the note had not been paid before December 27, 1972, the date on which the loan on the building was closed and the date the bank received the excess loan funds from Clark. Special Issue No. 1 is immaterial because it is undisputed that Izaks and NBC did not agree to a release of the written security agreement.

■ We cannot agree with the plaintiff's contention that the trial court's judgment is to be construed as a judgment non obstante veredicto. Although the bank filed a motion to disregard the finding on issues 1, 2, 3 and 5, the court made no ruling thereon. The judgment was rendered on the basis of the bank's motion for judgment alleging that the findings relied on by Izaks were not controlling and immaterial.

■ It is well settled that where the jury's findings are immaterial the trial court is authorized to ignore such findings and render judgment. *First Am. Life Ins. Co. v. Slaughter,* 400 S.W.2d 590 (Tex.Civ. App.—Houston 1966, writ ref'd n. r. e.); *Camco, Inc. v. Evans,* 377 S.W.2d 703, 707 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.); See *Schiller v. Rice,* 151 Tex. 116, 246 S.W.2d 607 (1952).

This brings us to the bank's cross point of error contending that the trial court erred in failing to enter a judgment against Izaks on its cross-action for usurious interest allegedly paid to him on behalf of Speaks. The jury found that the bank paid Izaks the sum of $6,250.00 as interest on behalf of Speaks on Izaks' $90,000.00 note. According to the bank's calculations, this amounted to usurious interest. The bank moved

for judgment on the verdict for double the amount found by the jury. The bank contends the trial court erred in rendering a take-nothing judgment against it and now seeks to have this court render judgment in its favor for $12,500.00. The contention is without merit and is overruled.

■ The bank does not seek to recover for usurious interest paid by it, but seeks only to recover usurious interest paid by it on behalf of Speaks. Since the bank suffered no injury, we fail to see how a cause of action could arise in favor of the bank. If a cause of action for usurious interest accrued, it accrued in favor of Speaks and not the bank.

The judgment of the trial court is affirmed.