**3–C OIL COMPANY, Appellant,**

v.

**MODESTA PARTNERSHIP, et al., Appellees.**

**No. 13655.**

Court of Appeals of Texas, Austin.

Jan. 11, 1984.

Rehearing Denied March 14, 1984.

---

**4.** Appellant is entitled to pre-judgment interest in the amount of $2,735.92 ($38,261.01 × 6% × 435/365 days = $2,735.92).

William David Deaderick, Gibbins, Burrow & Bratton, Austin, for appellant.

Mark H. How, Lawrence M. Wells, Rohde, Chapman, Ford & How, Dallas, for appellees.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

EARL W. SMITH, Justice.

This appeal involves complex and competing claims to oil field equipment located on three oil and gas leases known as the E.B. White, G.C. Walker and P.L. Walker leases in Caldwell County. The cause originated on October 18, 1978, when E. Dale Hartley (Hartley) sued 3–C Oil Company, a partnership composed of William A. Cox, Woodson Cox and John Cox (3–C). Hartley claimed title to equipment on the E.B. White and P.L. Walker leases.

3–C, by a series of pleadings and counter-claims, joined, as third-party defendants; Modesta Partnership (Modesta), Palo Pinto Limited Partnership (Palo Pinto),

Judgment Oil and Gas Company, a partnership (JOG) and Jim Burden, Lionel Aiken and Jeffrey Munsuy, as trustees (Trustees). All third-party plaintiffs filed answers and counter-claims against 3–C, claiming title in various ways to the equipment on the three leases and alleging that 3–C converted such equipment to the damage of third-party plaintiffs. Hartley took a nonsuit as to 3–C and the parties were realigned at trial, with Modesta, Palo Pinto, JOG, and Trustees as plaintiffs and 3–C and its three partners as defendants. Based partially on the jury's verdict and partially on the trial court's own findings of fact and conclusions of law, the court rendered judgment in which it, *inter alia:*

1. Ordered, adjudged and decreed that ... plaintiffs' title to and ownership of the equipment identified in the inventory attached to the judgment [the equipment on the three leases] "is hereby in all things ratified and confirmed"; and

2. Awarded Modesta, Palo Pinto, JOG, and Trustees judgment in the total sum of $289,299.40 with interest against 3–C (the partnership), John Cox, Woodson Cox and William Cox, and 3–C Oil Company, Inc., jointly and severally.

Appellants, 3–C (3–C Oil Company, Inc.—John Cox, Woodson Cox and William Cox), assign twenty-one points of error. In points six and seven 3–C contends that the trial court erred in awarding damages to Modesta, et al. because there is no evidence or insufficient evidence of the fair market rental value of the equipment in question and that there is insufficient evidence linking any rental values of the equipment to the dates or time period of the alleged conversions. In point fifteen, 3–C contends that the court erred in entering judgment that JOG owns the equipment in question because JOG had never appeared in this cause. In this connection, 3–C argues that JOG did not plead that it acquired title and right to any of the property in question. In point fourteen 3–C avers that the trial court erred in adjudging that Palo Pinto owns the equipment in question because

there is no evidence to support that aspect of the judgment. Point sixteen raises the argument that the trial court erred in adjudging that Modesta owns all of the equipment in question because Modesta did not claim the equipment on the P.L. Walker lease and there are no pleadings to support that aspect of the judgment. In points seventeen and eighteen 3–C contends that the trial court erred in holding that Modesta owned all of the equipment in question, and in particular the E.B. White lease. As to the E.B. White lease, 3–C argues that the evidence is insufficient to show that Oil, Gas and Mineral Developments, Corp. (OGMD) owned the equipment on such leases at the time of a United States Marshal's sale under which Modesta claims. It is contended in point nineteen that the trial court erred in holding that the Trustees owned all the equipment in question because the Trustees did not claim the equipment on the G.C. Walker lease, and there are no pleadings or evidence to support that aspect of the judgment. In their final point, number twenty-one, 3–C says that the trial court erred in computing the damages from the verdict and in awarding *all* plaintiffs money damages. We sustain these points of error, reverse the judgment and remand this cause. In view of our disposition of the case we need not discuss the remaining points of error of 3–C.

## CONFLICTING CLAIMS OF TITLE TO THE EQUIPMENT ON THE THREE LEASES

The three oil and gas leases and all equipment thereon were owned by OGMD in the early 1970's. Numerous California investors, clients of Trustees, had entered into agreements with OGMD to make certain investments in oil and gas properties in Caldwell County. As stated, this case involves conflicting claims as to ownership of equipment on the E.B. White, G.C. Walker and P.L. Walker leases. As to the equipment on the leases, the common source of title originated in OGMD. An agreement was reached with the California investors whereby OGMD would sell the equipment

to one of the JOG partners (T–VESTCO) for cash. T–VESTCO would then sell the equipment to an equipment leasing firm known as IDS; then, IDS would lease the equipment back to T–VESTCO, as one of the partners of JOG. A firm known as Equico became the successor in interest to IDS and the lease contracts held by IDS. JOG defaulted on its lease payments on the IDS lease contracts and worked out an agreement with OGMD whereby the latter agreed to "assume the position of JOG"— i.e. OGMD became the lessee and was obligated on the lease to IDS and its successor Equico. This agreement whereby OGMD, as transferee of the leases became obligated to IDS and/or Equico, occurred May 14, 1973.

On August 28, 1978, Equico conveyed the equipment on the P.L. Walker and E.B. White leases to E. Dale Hartley. Apparently, this left title in the equipment on the G.C. Walker lease in Equico.

On February 16, 1980, Hartley Associates, a partnership, conveyed title to the equipment on the P.L. Walker and E.B. White leases to Trustees.

OGMD did not perform its obligations under the lease contracts or its investment contracts with the California investors and the Trustees were employed as attorneys for the various investors. They filed ten separate lawsuits against OGMD in California and judgments in the total sum of $4,200,000.00 were obtained. The agreement between the investors and the trustees was an "all for one—one for all" arrangement whereby all investors would share pro-rata in any sums recovered by any one of them from OGMD.

In 1978 all of the investors became a partnership known as JOG, represented by the attorneys as Trustees. On April 21, 1976, judgments were obtained by Modesta and Palo Pinto (in their separate suits) against OGMD. Palo Pinto and Modesta became partners in JOG under the "all for one—one for all" arrangement. Abstracts of judgment were filed in Caldwell County on such judgments. In an attempt to realize something from their judgments, an agreement was reached whereby JOG, Inc. operated OGMD leases (including the three in question) for a short period of time. This agreement came to an end when a foreclosure sale was conducted on September 5, 1978 under a THC Financial Corporation judgment, execution, levy and notice of sale. 3–C, the partnership, purchased the three oil and gas leases in question and received a sheriff's deed dated September 6, 1978. The deed from the sheriff to 3–C contained the following recitation:

"There is excluded from this conveyance all personal property located on the three above described leases."

A United States Marshal, pursuant to writ of execution issued under Modesta's judgment, on December 20, and 27, 1978, levied upon the equipment on the E.B. White and G.C. Walker leases. Notice of sale was posted and on January 17, 1979, the Marshal conducted the sale of the equipment on such leases. Modesta was the high bidder and the Marshal delivered a bill of sale to Modesta, dated February 8, 1979.

A second writ of execution was issued on the Palo Pinto judgment. The United States Marshal levied on equipment on the P.L. Walker lease and posted notice of sale which was scheduled for December 27, 1979. However the sale was not conducted, being temporarily enjoined pursuant to an agreement by the parties (3–C and Palo Pinto) and the United States district court for the Western District of Texas.

## PLEADINGS AS TO TITLE, DAMAGES AND ANCILLARY RELIEF

In the pleadings upon which the parties went to trial, the claims of the various parties as to title, damages and other relief are as follows:

1. 3–C claims title to the equipment on the three leases by virtue of their purchase of the three leases at the sheriff's sale on September 5, 1978. 3–C contends that the equipment on the leases was "fixtures" and was con-

veyed as a part of their leases that they purchased.

(A) Modesta, et al., concedes that if the equipment was fixtures, it was included within the sale of leases, but insists that, under the undisputed evidence, the property was personalty.

(B) The trial court held, as a matter of law, that the equipment was personalty and that 3–C did not acquire title to same by its purchase of the oil and gas leases.

3–C sought injunction against Modesta, et al. to prevent removal of the equipment on the leases, and sought damages for wrongful execution, levy and sale.

2. Modesta claims title to the equipment on the G.C. Walker and E.B. White leases by virtue of its judgment against OGMD on April 21, 1976 in the United States district court of California, writ of execution issued thereon December 15, 1978, levy on the equipment by the U.S. Marshal on December 20, and 27, 1978 and sale by the Marshal on January 17, 1979, at which Modesta purchased the equipment. The Marshal's bill of sale to Modesta is dated February 8, 1979.

Modesta alleges that it made demand upon 3–C to deliver their property to it or give it access to the two above named leases in order to get its property, that 3–C refused such access and continued, after the sale, to use the property in its business thereby depriving, since January 17, 1979, Modesta of use of the property "which Counter-Plaintiff [Modesta] would show *to have* a reasonable rental value *in and around Caldwell County, Texas* of at least $5,000.00 *per month.*" (emphasis added)

Alternatively, Modesta alleges 3–C's wrongful possession of the property constituted conversion of said property which had a fair market value in and around Caldwell County, Texas on January 17, 1979, of not less than $150,000 for which Modesta sues. Modesta did not plead loss of rental value under the alternative conversion allegation. Modesta also alleged that 3–C's actions were willful, wanton and malicious, and sought exemplary damages. Modesta also sought a mandatory injunction to require 3–C to allow the removal of the property from the leases.

3. Palo Pinto claims title to the equipment on the P.L. Walker lease through a judgment obtained by it against OGMD on April 21, 1976 in the United States district court, Northern District of California, by execution issued on said judgment November 2, 1979 and levy on property on the P.L. Walker lease by the Marshal on November 14, and 15, 1979, notice of sale, with the sale to be conducted on December 27, 1979. As noted above, the sale was not held. Palo Pinto asserts that it has "superior right to title of said personal property" (on P.L. Walker lease) by reason of the above recited facts. It further alleges that OGMD owned the property on the P.L. Walker lease. Palo Pinto sought a mandatory injunction directing the Marshal to proceed with the sale of the property on the P.L. Walker lease and to prevent 3–C from interfering therewith.

It also alleged that 3–C's wrongful possession of the property deprived Palo Pinto of use of same since December 27, 1979 and that it would show the property "*to have* a reasonable *rental value in and around Caldwell County* ... of at least Two Thousand Five-Hundred Dollars ($2,500.00) *per month.*" (emphasis added)

Palo Pinto did *not* allege *conversion* of the property by 3–C; nor did it ask for exemplary damages.

4. The Trustees claim, in their trial pleading, to hold title to equipment on the E.B. White and P.L. Walker leases as a result of an assignment from Hartley Associates dated February 16, 1980.

Trustees plead that they have been deprived of use of the equipment since

September 5, 1978, or alternatively, since February 16, 1980, the date of the bill of sale from Hartley to Trustees. We note that in the bill of sale from Equico to Hartley, upon which Trustees must rely for their chain of title, it is recited that "by acceptance of this document, E. Dale Hartley acknowledges that said personal property has been in the possession of and under the control of Oil, Gas and Minerals Development Corporation ... since 1973."

Trustees alleged, in connection with the deprivation of use, that they were deprived of use of said equipment, "property which Burden, Aiken and Munsuy [Trustees] would show to have a reasonable rental value *in and around Caldwell County, Texas* of at least five thousand ($5,000) *per month* for which sum [Trustees] sue...." (emphasis added)

Alternatively Trustees alleged that 3–C's wrongful possession of Trustees' property was a conversion of the property by 3–C, that the property had a fair market value on August 28, 1978 [date of bill of sale from Equico to E. Dale Hartley] or, alternatively, February 16, 1980 of not less than $150,-000.00, for which they sue. Trustees also sought exemplary damages and a mandatory injunction to allow them to recover the property from 3–C.

5. JOG, the partnership, did not file pleadings in which it claimed title, as an entity to any of the property in question, nor did it seek damages in its name. Oral testimony was introduced as to the nature of the JOG partnership, its membership, and that any title acquired by Modesta, Palo Pinto, or Trustees (who were trustees for JOG) would be held by Modesta, Palo Pinto or Trustees, as the case might be, for the benefit of the JOG partners under an "all for one—one for all" agreement by which any recovery by Modesta, Palo Pinto or Trustees would be held by the party making such recovery for the benefit of all partners of JOG on some sort of pro-rata basis. Written evidence of such agreement was not introduced.

## DECISION AS TO TITLE AND DATES OF CONVERSION

In its judgment the trial court found as a matter of law "that there was no evidence submitted which in any manner controverted the fact that the equipment in question [on the three leases] ... was not personal property" and that "there had been no evidence that 3–C had sustained any damages." In its Conclusions of Law the court also found "that the equipment is personal property."

The case was submitted to the jury on special issues. The first three issues, except for the name of the lease involved, were identical in wording and read:

Do you find from a preponderance of the evidence that Defendants [3–C] converted the equipment on the G.C. Walker lease?

Answer: "We do" or "We do not."

As used in this charge the term "conversion" means the wrongful exercise of dominion and control over another's personal property to the exclusion of or inconsistent with the rights of the owner, or the person who was entitled to the possession of the property involved.

Each issue was answered "We do." It is apparent that the jury was not asked, as to each of the three leases, to find the owner of the property converted and the date of the conversion thereof. The trial court did not make findings of *fact* as to ownership or date of conversion. Rather, it made these findings as "conclusions of law" as follows: that JOG is a California partnership; that Modesta and Palo Pinto are partners in JOG; that at "some time" prior to the controversy arising, the equipment in question was owned by OGMD, who is the common source of title of Modesta and Palo Pinto's claims of title to the equipment; that "prior to the controversy arising," OGMD entered into a sale and leaseback transaction with Equico, or its prede-

cessor, which transaction involved equipment on the P.L. Walker and E.B. White leases; that Equico conveyed all its right, title and interest in and to the equipment on P.L. Walker and E.B. White leases to Hartley by bill of sale dated August 28, 1978; that Hartley, in turn, conveyed title to the equipment on the P.L. Walker and E.B. White leases to Trustees by bill of sale dated February 16, 1980; that the Trustees held the title acquired from Hartley in trust for JOG; that equipment on the P.L. Walker and E.B. White leases was purchased by Modesta at the United States Marshal's sale conducted January 17, 1979 and conveyed to them by the Marshal on February 8, 1979; and that Palo Pinto obtained judgment against OGMD on April 21, 1976, obtained writ of execution on said judgment, levied on equipment on the P.L. Walker lease on November 14, and 15, 1979 and that notice of sale was issued with sale scheduled for December 27, 1979 (as noted above, the sale was not held).

The court further concluded, as a matter of law, that 3–C acquired no interest in the equipment on the leases by way of the execution sale on September 5, 1978, or through the sheriff's deed dated September 6, 1978, which deed conveyed "all right, title and interest of OGMD to the E.B. White, G.C. Walker and P.L. Walker oil and gas leases"; that the Caldwell County sheriff did not levy on any of the equipment when levying the writ of execution which formed the basis of the execution sale under which 3–C bought all of OGMD's right, title and interest in and to the three leases; and that the sheriff's deed to 3–C specifically excluded personal property.

The court then made a series of conclusions of law as to title to equipment on the three leases as follows:

That Modesta and Trustees, jointly, hold legal title to equipment on the E.B. White lease for the benefit of JOG; That Trustees hold legal title to equipment on the P.L. Walker lease, which legal title is to the extent that they are not in conflict, concurring with rights of

Palo Pinto by and through its levy upon the equipment. That such title, held by Trustees and Palo Pinto, is for the benefit of JOG.

That plaintiffs have proven their claims of title to equipment on the E.B. White lease both through the United States Marshal's bill of sale dated February 8, 1979 and the bill of sale from Hartley to Trustees dated February 16, 1980;

That plaintiffs have proven their claims of title to the equipment to the P.L. Walker lease, both through bill of sale from Hartley to Trustees dated February 16, 1980, and through their judgment and levy upon said equipment.

The trial court further found, as a conclusion of law, that 3–C converted the equipment on the three leases and that the dates of conversion were:

As to G.C. Walker and E.B. White leases, January 17, 1979 [this conclusion is necessarily based upon United States Marshal's sale to Modesta].

As to P.L. Walker lease December 27, 1979 [necessarily based upon date of scheduled but unheld U.S. Marshal's execution sale under Palo Pinto judgment].

The trial court further concluded as a matter of law that Plaintiffs [Modesta, et al.] are entitled to Judgment against Defendants [3–C] for the rental value of the equipment on the E.B. White and G.C. Walker Leases from January 17, 1979 to date of Judgment and entitled to Judgment against Defendants for the rental value of the equipment on the P.L. Walker Lease from December 27, 1979 until date of Judgment, said rental value being $272,299.40.

and that "Plaintiffs are entitled to Judgment against Defendants for the sum of $17,000.00 in punitive damages." The conclusion of law as to the amount of rental values is based upon the following jury finding:

What sum of money, if any, do you find from a preponderance of the evidence to be the fair market monthly rental value in Caldwell County, Texas of the equip-

ment located upon the following leases at all times material to this litigation?

Answer in dollars and cents:

1. E. B. White lease $5,000.00
2. G. C. Walker lease $2,000.00
3. P. L. Walker lease $2,000.00

The jury also awarded $17,000 as exemplary damages. The judgment, as noted above, awarded judgment to all plaintiffs in the total sum of $289,299.40 (rental value plus exemplary damages) to *Modesta, Palo Pinto, JOG* and *Trustees.*

It is our decision that the trial court erred in holding that Palo Pinto owned the equipment on the P.L. Walker lease and in awarding damages to Palo Pinto for loss of rental values. Palo Pinto's claim is based on judgment, execution, levy and notice of sale. The sale was scheduled to be held December 27, 1979, but no such sale was held. OGMD did not own the property at the time of the levy by Palo Pinto. At such time legal title was in Hartley, as admitted by Aiken, one of the trustees, in his testimony. Had the equipment on the P.L. Walker lease belonged to OGMD at the time of the levy and notice of sale, the plaintiff in execution (Palo Pinto), by virtue of the levy, at the most, acquired only a lien on the property. *Herndon v. Cocke,* 138 S.W.2d 298, 300 (Tex.Civ.App. 1940, no writ). It is the sheriff (in this case the Marshal), not the judgment creditor (in this case Palo Pinto) who takes possession of the property when he levies on same. Tex.R.Civ.P.Ann. 639 (1967); *Beaurline v. Sinclair Refining Company,* 191 S.W.2d 774 (Tex.Civ.App.1946, writ ref'd n.r.e.); *Keystone Pipe and Supply Co. of Texas v. Milner,* 297 S.W. 1089 (Tex.Civ.App.1927, no writ). The execution and levy by Palo Pinto had the effect of placing the equipment in *custodia legis.* It gave no title or right of immediate possession to Palo Pinto. A valid judgment, execution and *sale* are required to pass title to property at an execution sale. *Griggs v. Montgomery,* 22 S.W.2d 688, 694 (Tex.Civ.App.1929, no writ). The general rule is that title to property sold at judicial sales passed upon confirmation thereof and payment of the

purchase price. *Dilley v. Jasper Lumber Co.,* 114 S.W. 878 (Tex.Civ.App.1908, rev'd on other grounds, 103 Tex. 22, 122 S.W. 255, 1909).

An attachment lien attaches only to the debtor's interest; if the debtor has no title, none passes on the foreclosure of the lien. *Lem Smith & Co. v. Sweatt,* 72 S.W.2d 313, 314 (Tex.Civ.App.1934, no writ). Attachment lien creditors get no greater interest than that owned by the debtor at the time of the foreclosure purchase. *Brinkman v. Rick,* 19 S.W.2d 808, 812 (Tex.Civ.App.1929, writ ref'd). A plaintiff seeking recovery under a title acquired at an execution sale must show that the land, at the time of the levy and sale, was owned by the execution debtor. *Perryman v. Rayburn,* 30 S.W. 915 (Tex.Civ.App. 1895, no writ). Plaintiffs proved by their own evidence that OGMD did *not* own the equipment on the P.L. Walker lease on which Palo Pinto made its levy. Therefore, Palo Pinto could not get legal title to such property. Even if OGMD had owned the property at the time of the levy under the Palo Pinto execution, Palo Pinto would have only a lien with no right to possession at such time. To assert that Palo Pinto had any title to the property prior to the sale involves sheer speculation that Palo Pinto would have been the highest bidder and purchaser at the Marshal's sale. Palo Pinto cites no authority holding that it acquired title under its levy and notice of sale, which sale was never held.

We now turn to the title asserted by Modesta, which has as its basis a Marshal's sale conducted on January 17, 1979. Here again, OGMD, the judgment debtor did not have legal title to the property on the G.C. Walker and E.B. White leases at the time of such sale and purported purchase by Modesta. The testimony of Donald Raymond, managing partner of JOG, of which Modesta was a partner, clearly shows that title was in Hartley at such time. We note that the trial court in its conclusions of law, numbers 7, 8, and 9 determined that at a time prior to the controversy arising in this

cause, the equipment (on the leases in question) was owned by OGMD; that OGMD is the common source of defendants', Modesta and Palo Pinto's claims of title to the equipment; and that "prior to this controversy arising" OGMD entered into a sale and lease-back transaction with Equico Lessors, Inc. or its predecessor which transaction involved the equipment located upon the P.L. Walker and *E.B. White* leases. Modesta did not acquire legal title by its purported purchase under the Marshal's sale and the Marshal's deed to Modesta and the trial court erred in so holding. *Brinkman* and *Perryman, supra.*

Finally, Trustees, by their pleadings, claim title by the instrument called an "Assignment" to Trustees, but which appears to be in the nature of a bill of sale. The assignment, or bill of sale, is from Hartley to Burden, Aiken, and Munsuy, trustees, dated February 16, 1980. Hartley's title, however, was dependent on a bill of sale that it obtained from Equico, dated August 28, 1978. The property conveyed in such bill of sale was described as:

> Approximately fifty-four (54) each of the following: Floating equipment, Casing, Tubing Rods, Electrical Line, Electrical Panel, Flow Line, Pump Unit, Insert Pump, Well Head, Polish Rod, Tankage: Korkele.*

Following the signature of Equico there is an asterisk with the following notation: "as scheduled on contracts numbered...." To determine the property which Equico conveyed to Hartley, reference must be made to the numbered contracts listed. Only two of the contracts can be identified as referring to property on any of the leases in question—the P.L. Walker and the E.B. White leases. No identifiable reference is made to the G.C. Walker lease. The result is that Equico did not convey title to property on the G.C. Walker lease. Moreover, Trustees, in their pleadings, only claimed title to equipment on the E.B. White and P.L. Walker leases and this title is alleged to have been acquired on February 16, 1980 by assignment from Hartley. We further note that in the original petition by Hartley against OGMD, Hartley only claimed title to equipment on the E.B. White and P.L. Walker leases and made no claim to the property on the G.C. Walker lease. In his bill of sale from Equico, Hartley (and therefore anyone claiming under Hartley) was put on notice that OGMD "has been in possession and control of the property since 1973."

We hold that since OGMD did not own the equipment on the leases, but held such equipment under some lease agreement with Equico, 3–C did not get title to the equipment by the bill of sale by the sheriff on September 6, 1978; that Modesta did not acquire title to the equipment on the G.C. Walker and E.B. White leases by the Marshal's sale on January 17, 1979; that Palo Pinto did not acquire any title by its execution, levy and notice of sale of equipment on the P.L. Walker lease; that the Trustees on February 16, 1980 did acquire title to equipment on the E.B. White and P.L. Walker leases by a bill of sale from Hartley. We hold, further, that there is no evidence of legal acquisition of title of the equipment on the G.C. Walker lease by any one of the plaintiffs, and as to the equipment on that lease, the chain of title proved by plaintiffs leaves title to the equipment in Equico. If this is not so, plaintiffs have failed to prove that OGMD owned the equipment on the G.C. Walker lease. In the absence of such proof, none of the plaintiffs could have acquired title to such equipment.

We further hold that the trial court erred in concluding as a matter of law that the dates of conversion on the G.C. Walker and E.B. White leases was January 17, 1979. The trial court's holding as to such date is based upon the United States Marshal's sale under the Modesta judgment against OGMD. Since there is no evidence, or at best, insufficient evidence that OGMD owned the equipment under the G.C. Walker and E.B. White leases, Modesta received no title by its "purchase" at the Marshal's sale. Thus, 3–C could not have converted the equipment from Modesta on January 17, 1979.

We have held that Palo Pinto received no title under its judgment against OGMD, for its execution, levy and notice of sale as to equipment on the P.L. Walker lease. OGMD did not own the equipment on December 27, 1979, the date of the scheduled Marshal's sale which was never held. 3–C therefore could not have converted the equipment on the P.L. Walker lease from Palo Pinto on December 27, 1979, and we so hold. Moreover, in its trial pleadings, Palo Pinto did *not* plead conversion.

The trial court, as noted, correctly held that Trustees obtained title to the equipment on the E.B. White and P.L. Walker leases by bill of sale from Hartley on *February 16, 1980*. Any conversion by 3–C from Trustees as to the equipment on the E.B. White and P.L. Walker leases could not have occurred earlier than February 16, 1980, the date of the bill of sale by which Trustees acquired title. It is to be noted that the trial court did *not* find that conversion by 3–C as to the equipment on these two leases occurred on *February 16, 1980*.

From all our holdings, noted above, the trial court was in error in its conclusions of law as to the dates of conversion. We hold further that JOG's rights are not based on any pleadings filed by it. Its rights must depend on recovery by either Modesta, Palo Pinto or Trustees, who, if they acquired title, held same for the benefit of JOG.

### SUFFICIENCY OF EVIDENCE ON RENTAL VALUE

3–C contends that the trial court erred in awarding damages for loss of rental value in that there was insufficient evidence of the fair market rental value in Caldwell County as to the equipment in question; they further contend that there was insufficient evidence linking any rental values of the equipment to the dates or the time period of conversion. We agree. The insufficiency of evidence as to title and dates of conversion are elsewhere discussed in this opinion. Without title in any one of the plaintiffs, there could be no conversion as to such a plaintiff.

More dispositive of the points raised by 3–C is the fact that *each plaintiff* alleged loss of rental value *in and around Caldwell County*. Modesta, et al. contends that their expert O.M. Bell, testified as to the fair market rental value of the equipment for the period between January 17, 1979 and the date of trial with regard to the E.B. White and G.C. Walker lease equipment and for the period between December 27, 1979 and the date of trial with regard to the P.L. Walker lease equipment. In such reliance, Modesta, *et al.* quotes from the testimony of Bell as to the fair market *sale* value, and that the "market" for the sale of the equipment is not confined to Caldwell County. An examination of Bell's testimony shows that he did not so testify as to *rental value*. It is true that Bell, in testifying as to fair market *sale* value of the equipment stated that the market for pumping unit equipment was not isolated to any particular place, that the market for such equipment was not confined to Caldwell County and that you could *sell* such equipment at any place "you could find people drilling wells." However, in testifying as to *rental* value of the equipment Bell testified that renting and leasing such equipment is a normal thing, which he engaged in his own business and that renting equipment affords a tax advantage. He was then asked his opinion as to rental value as follows:

Q. Do you have an opinion, Mr. Bell, based upon your experience and your evaluation of this equipment as to what the equipment, which was located upon the G.C. Walker Lease, that you evaluated would represent for a *monthly* basis?

\* \* \* \* \* \*

A. Oh, yes.

Q. Mr. Bell in determining the rental in [sic] a piece of oil field equipment, what factors do you consider?

A. I try to have it pay itself out in twelve months and still have the equipment, and that's figuring a twenty percent interest factor in it.

\* \* \* \* \* \*

Q. Based upon your experience, Mr. Bell, and your evaluation of this equipment could you please give me your opinion as to what the equipment located upon the G.C. Walker Lease *would rent for on a monthly basis?*

\* \* \* \* · \* \*

A. *Monthly* rental basis, [would] be four thousand one hundred thirty-five dollars. (emphasis added)

We note however, that Modesta, et al. neglects to point out that, in testing the qualifications of the witness Bell, the attorneys for 3–C proved by Bell that he had never rented any equipment to any operator who had leases upon which they were going to use equipment in Caldwell County; that he had never rented any equipment to be used on any leases adjacent to Caldwell County; and that the last time he rented any equipment was in 1980 in Stephens County, south of Wichita Falls and approximately 240 miles from Caldwell County. Bell then testified as follows:

Q. Okay. Do you have any information at all concerning the rental of equipment from any transaction that occurred in Caldwell County?

A. No, sir.

The only testimony developed by Modesta, *et al.* as to the fair market rental value of the equipment in question came from Bell. We think that the record shows that Bell was testifying as to the *present* market value, *i.e.*, at the time of trial. Modesta, *et al.*, were confined to their pleadings as to proof of loss of rental value. Each plaintiff pleaded loss of rental value *in and around Caldwell County.* The only evidence on rental value came from Bell and he admitted that he had no knowledge of rental value in Caldwell County.

▬▬ A plaintiff is entitled to recover the reasonable value of the use of the property for the purpose for which it was being used when converted or actually used by the wrongdoer. *Block Motor Co. v. Melia,* 247 S.W. 666, 669 (Tex.Civ.App. 1923, writ dism'd). In *Block v. Melia,* the court stated:

On the theory of conversion, the evidence in this case was insufficient to raise the issue of the market value of the use of the truck from the time it was seized until the date of judgment. One witness testified that he could make per day in operating the truck. Appellee testified as to the value per day of the use of the truck.... The facts so testified to could not constitute the basis for an answer to the third question, "What is the value of the use *per day* of the car in question since January 20, 1921?" *Id.* (emphasis added)

Damages for the value of use must be based upon the manner and kind of use to which it was put from the time possession was taken until it was returned to the owner. *Brookmole v. Kinchen,* 253 S.W. 953, 954 (Tex.Civ.App.1923, no writ), quoting from *Coward v. Sutfin,* 185 S.W. 378 (Tex.Civ.App.1916, no writ).

Texas cases hold that it is improper to calculate damages for loss of rental value by determining the rental value per day, week, or month and then multiplying them by the time used. Citing *Block v. Melia* and *Commercial Music Co. v. Klag,* 288 S.W.2d 168, 172 (Tex.Civ.App.1955, no writ), the court in *Associates Investment Company v. Cobb,* 386 S.W.2d 578, 583 (Tex.Civ.App.1964, no writ) stated that in fixing damages for loss of use it is "erroneous to fix a rate per day for loss of use of the truck and multiply it by the number of days." The jury, in *Associates Investment* was inferentially instructed to use this erroneous method by an instruction which stated:

In awarding damages, if any, under this issue, you may consider the damages, if any, sustained by ... reason of loss of use of the F–700 for a period of 440 working days after the date of the conversion, if any, which were approximately caused by the conversion, if any. *Id.* at 582.

▬▬ The court held that the jury should have been left free to find the loss of use for a period of less than 440 working days. Consideration should be given to the possi-

bility that plaintiff might not have been able to rent or use the property continuously because the measure is the market value of the use, the net usable value, less the expense of keeping the property. *Brookmole v. Kinchen, supra,* at 953–54. *See also Railey v. Hopkins,* 50 Tex.Civ.App. 600, 110 S.W. 779 (1908, no writ).

In this case the jury was asked in special issue number 9 "what sum of money, if any, do you find from a preponderance of the evidence to be the fair market *monthly rental* in Caldwell County, Texas of the equipment located upon the following leases at all times material to this litigation." The jury found a monthly rental value of the equipment located on each of the three leases. Based upon the jury's answer as to the monthly rental value, the trial court computed a total loss of rental value based upon his findings as to the dates of conversion. The procedure adopted by the court in this case is much like that in *Commercial Music Co. v. Klag, supra,* where the appellant contended that the court erred in submitting to the jury the value of the use of certain machines per week and then multiplying this sum by 45, being the number of weeks found by the *court* that such loss of use would have continued. In *Commercial Music Co. v. Klag, supra* at 171–72 the court held:

> This was a wrong method for determining the value of the loss of use of the machines, and the error is of such a nature as was calculated to, and probably did, result in causing in rendition of an improper judgment against appellant. This method of determining the value of the loss of use of property has heretofore been condemned. *Block Motor Company v. Meila,* Tex.Civ.App., 247 S.W. 666; *Brookmole v. Kinchen,* Tex. Civ.App. 253 S.W. 953. Appellee contends that the matter of the weekly value of the use of the property having been decided, the trial court was authorized to find the number of weeks the said value would continue. We are well aware of the rule that where some phase of a cause of action or defense is submitted to a jury and no request is made

by either party that the other phases of the same matter be submitted to the jury such failure to so request is a waiver of the unsubmitted phases, and the trial court can make a finding upon such unsubmitted phases. *However, the question here is not as to whether under the circumstances the trial court could determine the number of weeks for which such weekly rental would continue, but the point is that this method of determining the rental value is not permitted regardless of whether the judge or the jury makes the finding.* (emphasis added)

██ We hold that the evidence is insufficient to support the finding of the jury as to the monthly rental value in Caldwell County and we further hold that the method adopted by the trial court in assessing damages against 3–C as to loss of rental value was erroneous.

## DAMAGES AND JUDGMENT

We hold that the trial court erred in its computation of damages for loss of rental value. As shown above, there is no proof that Modesta or Palo Pinto received title to any of the equipment. Trustees did get title to equipment on the E.B. White and P.L. Walker leases as of February 16, 1980. There is no showing that any plaintiff acquired title to property on the G.C. Walker lease. Loss of rental value, as found by the *court* ($272,299.40) was taken from the trial court's conclusion of law that plaintiffs (Modesta, Palo Pinto, JOG and Trustees)

> are entitled to Judgment against Defendants for the rental value of the equipment on the E.B. White and G.C. Walker Leases from January 17, 1979 [date of Marshal's sale to Modesta] until date of Judgment, and entitled to Judgment for the rental value of the equipment on the P.L. Walker Lease from December 27, 1979 [date of scheduled sale by Marshal on the Palo Pinto judgment] until date of Judgment."

Judgment was entered awarding *Modesta, Palo Pinto, JOG* and *Trustees* damages for loss of rental in the above amount. The trial court did not conclude as a matter of law or find as a fact that any plaintiff was entitled to loss of rental value in any amount from February 16, 1980 (date of bill of sale from Hartley to Trustees as to the E.B. White and P.L. Walker lease equipment). The jury found in answers to special issues numbers 15 and 16 that Hartley owned the equipment on the E.B. White and P.L. Walker leases at all times material to the suit prior to February 16, 1980.

Based on our holding that neither Modesta nor Palo Pinto acquired any title to the equipment on any lease, and in the absence of any finding or conclusion of law that any plaintiff was entitled to ·rental value from February 16, 1980 to the date of judgment, the judgment of the trial court awarding damages for loss of rental value for the period stated in its judgment, based on the monthly rental value for the entire period, must be reversed.

Likewise, the judgment awarding punitive damages must be reversed. First, as shown, no actual damages for loss of rental value (based upon impossible dates of conversion) were proved. If Modesta and Palo Pinto did not own the equipment, no conversion took place, as to them. The jury's finding of $17,000 as exemplary damages is based upon its answers to special issues 1, 2, 3 and 10. As noted above, issues 1, 2, and 3 do *not* require the jury to find the owner of the equipment converted by 3–C. Special issue number 10 inquires "Do you find from a preponderance of the evidence that Defendants acted willfully, wantonly, or maliciously in converting the equipment?"; the jury found "We do." In the trial court's judgment, the amount of exemplary damages ($17,000) is added to its computed loss of rental value ($272,299.40) and *all plaintiffs* are awarded damages in the total sum of $289,299.40. The judgment for punitive damages is therefore based on alleged conversions which are not supported by the evidence as to Modesta, Palo Pinto and JOG; the trial court concluded "that the defendants converted the equipment"—it does not find as fact or as a conclusion of law from whom the equipment was converted. Since some of the plaintiffs did not own the equipment on any of the leases, the judgment awarding exemplary damages to *all* plaintiffs is erroneous.

The judgment of the trial court also permanently enjoined 3–C from preventing plaintiffs from going onto leases and removing the property thereon, and further enjoined 3–C from interfering with plaintiffs and/or the U.S. Marshal's office posting a notice of sale or conducting said sale "with regard to the equipment identified on the attached inventory." In granting the injunction, we assume that the court intended to refer to the Palo Pinto judgment. However, as written, it is overly broad. The inventory attached to and referred to in the judgment includes property on all three leases. Palo Pinto levied only on the P.L. Walker lease. In any event, in view of our decision, Palo Pinto has no right to proceed with the sale since the property on the P.L. Walker lease does not belong to OGMD, and the trial court erred in granting the injunction.

The judgment of the trial court is reversed and this cause is remanded for new trial.

Reversed and Remanded.

PHILLIPS, C.J., not participating.

## ON MOTION FOR REHEARING

EARL W. SMITH, Justice.

On Motion for rehearing, Modesta, Palo Pinto, Trustees JOG (the partnership) and Judgment Oil and Gas Co., Inc. contend that this Court erred in six respects. We overrule the motion for rehearing.

In their first four assignments of error, Modesta, *et al.,* contend that we erred in holding: that there was no evidence of legal acquisition of title to the equipment on the G.C. Walker lease; that plaintiffs failed to prove that OGMD owned the equipment on the G.C. Walker lease prior

to acquisition of title to said equipment by Modesta through the United States Marshal's bill of sale; that OGMD did not have legal title to the equipment located upon the G.C. Walker lease; and that Equico held no title in and to the equipment on the G.C. Walker lease at any time material to the controversy. Modesta, *et al.*, argues that each of said holdings was not germane to any point of error raised by 3–C.

The judgment of the trial court reads, in pertinent part, as follows:

ORDERED, ADJUDGED and DECREED that Third Party Defendants (realigned as Plaintiffs) Modesta Partnership, Palo Pinto Limited Partnership, Judgment Oil & Gas Company, a partnership, Jim Burden, Lionel Aiken, and Jeffrey Mansuy, sued as Trustees, shall have and recover judgment of and from Third Party Plaintiffs (realigned as Defendants) 3–C Oil Company, Inc., 3–C Oil Company, John Cox, Woodson Cox and William Cox, jointly and severally, the sum of Two Hundred Eighty-Nine Thousand, Two Hundred Ninety-Nine Dollars and Forty Cents ($289,299.40), upon which sum interest shall accrue at a rate of 9% per annum from date of Judgment.

First, we note that Judgment Oil and Gas Co., Inc., was *not* awarded judgment. Its motion for rehearing is pursued without standing or merit.

Next, the judgment awards judgment to *all* realigned plaintiffs for $289,299.40. This figure is based upon three separate findings of the jury, that 3–C converted equipment on the G.C. Walker lease, the E.B. White lease, and the P.L. Walker lease with no jury finding as to ownership of the equipment or the date of the conversion. The amount awarded to *all* plaintiffs is based upon rental values of the equipment in the sum of $272,299.40 plus $17,000.00 in punitive damages.

We note again that the trial court did *not* make any *findings of fact* as to ownership of equipment on each of the three leases; nor did he find as a *fact* the *date* of any conversion by 3–C. Rather, as pointed out in our opinion, he decided these issues as a *matter of law*. In his conclusions of law as to ownership and date of conversion, we held that the court erred.

The assertion that our holdings were not germane to any point of error raised by 3–C is without merit. The judgment awards Modesta damages for rental value on all *three* leases. In its pleadings, Modesta claimed title to the G.C. Walker and E.B. White leases by virtue of purchase of the equipment evidenced by a U.S. Marshal's bill of sale dated February 8, 1979, pursuant to a sale conducted by the Marshal on January 17, 1979.

In points of error 16, 17, and 18, 3–C makes it clear that it contends that the trial court erred in entering judgment that Modesta "owns all the equipment in question." 3–C states correctly that Modesta made *no* claims to the P.L. Walker lease equipment. 3–C further argued that the U.S. Marshal's sale was void because it was not held in compliance with the law and that there was no evidence that OGMD owned the equipment on the E.B. White lease. These points were grouped together for statement of facts, authorities and argument. In its argument 3–C definitely points out that *"Modesta did not produce any evidence to prove that the equipment on the G.C. Walker lease was owned by OGMD on January 17, 1979."* (emphasis supplied).

 Even if technical rules of briefing are not complied with, the appellate court will pass on both the sufficiency and merits of the point in light of statement and argument thereunder. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 482 (1943); *Crisp v. Southwest Bancshares Leasing Co.*, 586 S.W.2d 610, 614 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Lintz v. Dillon*, 568 S.W.2d 147, 149 (Tex.Civ.App.1978), rev'd on other grounds, 582 S.W.2d 394 (1979); *C.L. Cooke and Son v. Trinity Universal Ins. Co.*, 464 S.W.2d 493, 496 (Tex.Civ.App. 1971), rev'd on other grounds, 469 S.W.2d 893 (1971).

It is clear that 3–C was challenging Modesta's ownership of equipment on the

G.C. Walker lease on several grounds, including the claim that Modesta did not prove ownership by OGMD, the judgment debtor, at the time of the sheriff's sale to Modesta. The contention of Modesta, *et al.*, that this Court has raised *"sua sponte"* the validity of Modesta's claim and the error of the trial court in awarding it judgment for rental value on more than the only equipment it could possibly claim legal title to (the G.C. Walker lease) is rejected as being unwarranted.

We pass now to Modesta's four assignments of error all dealing with ownership of the equipment on the G.C. Walker lease. We have again reviewed the record. Plaintiff's proof (Modesta, *et al.*) showed that the original dealings between the California investors (JOG) and OGMD were set out at length by Donald Raymond, an attorney and managing partner for JOG. According to him, JOG consists of a series of partnerships and individuals that had made investments in oil transactions in Caldwell and other counties through OGMD. In 1970 or early 1971 Raymond assisted in the formation of JOG to invest in the oil production business in Caldwell County through OGMD. JOG paid OGMD some three and one half million dollars to drill wells for them. Many of the partners loaned money for the completion of the wells, including the furnishing of necessary equipment.

Special arrangements were made between the partnership that Raymond was associated with and OGMD, for the financing of equipment to install on the wells. Raymond said "[w]e would buy the equipment originally from Oil, Gas and Minerals Development Corporation." The partnership that was involved in organizing, funding and managing this (buying of equipment, etc.) was T-Vestco, who would then *resell* the equipment to IDS Leasing Corporation, and T-Vestco would then lease the equipment back from IDS Leasing. Raymond re-iterated that the equipment would start with OGMD, who would then sell it to JOG, who would in turn resell the equipment to IDS Leasing Corporation and then lease the equipment back to T-Vestco as a partner of JOG. During all these transactions, the equipment would remain located on the leases.

Equico became the successor in interest to IDS. T-Vestco was required to make quarterly payments on the leases. Production from the oil leases was next to none, so T-Vestco (of which Raymond was president) went into default on its equipment lease payments. It worked out an agreement with OGMD whereby OGMD would take over the equipment lease contracts. Plaintiffs introduced into evidence two instruments, dated May 14, 1973, signed by T-Vestco and OGMD, containing also the required approval of IDS Leasing Corporation, as proof that the equipment was now leased to OGMD, who therefore became liable to IDS on the leases. The whole thrust of Raymond's testimony is that equipment on the leases was owned by IDS Leasing Corporation. The location of the equipment was not described in the transfer of the equipment leases to OGMD. This information was possibly in Raymond's files in San Francisco, or in JOG's office in Luling. It is clear, however, that there is no evidence excluding the G.C. Walker lease. It is further clear that it is through this entire arrangement of sale-leaseback that Trustees obtained title to equipment on at least two of the leases—the E.B. White and P.L. Walker leases, as will appear later.

OGMD did not make payment on the leases; there were other problems with investments made with OGMD, so several lawsuits were filed and judgments totalling in excess of $4,000,000.00 were taken. Several oil and gas leases (of OGMD) were levied upon; execution sales were held, and Raymond purchased several oil and gas leases, but *no equipment*. T-Vestco Financial Corporation acted as general partner in some limited partnerships. Money was invested in the drilling of particular wells in Caldwell County, using "OGMD to undertake those investments."

As noted, IDS Leasing, the owner and lessor of the lease equipment, somehow

was succeeded in interest by Equico; it was not established just how this occurred. At any rate, to trace chain of title to equipment on the leases, Modesta, *et al.,* plaintiffs, introduced a bill of sale from Equico to E. Dale Hartley, dated August, 1978, in which Equico conveyed to Hartley:

Approximately *fifty-four (54)* each of the following: Floating Equipment, Casing, Tubing Rods, Electrical Line, Electrical Panel, Flow Line, *Pump* Unit, *Insert Pump, Well head, Polish Rod, Tankage,* Korkele.* (emphasis added).

* * * * * *

———————

* As scheduled on contracts numbered [then follows the number of nine contracts].

The bill of sale recites further that:

by acceptance of this document E. Dale Hartley acknowledges that said personal property has been in the possession and under the control of Oil, Gas and Mineral Development Corporation, Lockhart, Texas since 1973.

It is only through the numbered contracts that it could possibly be ascertained on what lease the personal property or equipment was located. Plaintiff did not offer the numbered contracts into evidence. The aforementioned lease equipment transfers from T-Vestco to OGMD do refer to *two* of the contract numbers mentioned in the bill of sale from Equico to Hartley. There is no evidence that property on the G.C. Walker lease was, or was not included (by reference to the nine contract numbers) in the bill of sale from Equico to Hartley.

Trustees *in their pleadings* claim title to the equipment *only* on the *E.B. White* and *P.L. Walker* leases by virtue of bill of sale from Hartley dated February 16, 1980. It is of more than passing interest that such bill of sale purports to convey, *in addition,* equipment located on the *G.C. Walker* lease, to-wit, on Wells Nos. 1A, 2A, 3A, 4A, 5A, as well as other property located on said leases without reference to Modesta's bill of sale from the Marshal which purports to convey equipment located on the *same* wells. Aiken, one of the trustees, identified the bill of sale from Hartley to

the Trustees. As to the property conveyed by such bill of sale, he testified as follows:

Q. Do they [triplicate copies of the Bill of Sale] have any type descriptions as to the property which is being conveyed?

A. Yes. It has an inventory that is incorporated.

Q. Could you look over that inventory and identify if there may be any property on there that is conveyed by Hartley and Associates *other than the P.L. Walker* equipment.

A. Yes.

Q. Which?

A. Property located on the *E.B. White.*

Q. What is that, to refresh your recollection?

A. *G.C. Walker.*

On cross-examination he testified that after Modesta's judgment levy Hartley was claiming property located on the E.B. White lease and *"G.C. Walker's* lease equipment," and also made claim to equipment on the P.L. Walker lease, and that Hartley "claimed their ownership interest *through a leasing company that had leased equipment to OGMD."*

Notwithstanding the above, Hartley's original petition (later dismissed) claimed title only on the E.B. White and P.L. Walker leases; Lynn Kramer, a member of Hartley and Associates, in his testimony limited the claims of Hartley to equipment on the P.L. Walker and E.B. White leases; and Trustees, in their pleadings so limited their claims.

From what has been said, we conclude:

1. That though, through the financial arrangements between JOG and OGMD, the latter was the original common source of title to equipment on the three leases, it conveyed title to the investors, who in turn conveyed same to IDS Leasing.

2. IDS Leasing leased the equipment to T-Vestco.

3. T-Vestco transferred its interest, as lessee, to OGMD, who became *lessee,* not *owner* of the equipment.

4. Equico apparently purported to convey title to equipment on only E.B. White and P.L. Walker leases to Hartley. (Modesta, *et. al.* concedes the correctness of this conclusion).

5. Hartley attempted to convey title to equipment on all the leases, including the G.C. Walker, to the Trustees.

6. Both Hartley and Trustees, by their pleadings made no claim to equipment on the G.C. Walker lease; Lynn Kramer, a partner with Hartley said they made no claim to G.C. Walker equipment.

7. If Equico did not convey title to the G.C. Walker equipment, then same was left in Equico.

8. There is no evidence that when OGMD conveyed the equipment to the investors (who in turn conveyed to IDS, Equico's predecessor in title), that OGMD excluded the G.C. Walker equipment.

■ In order to recover on a theory of conversion, Modesta, *et al.* had the burden to obtain jury findings (there were none) or to establish by conclusive evidence that they were the owners of the property alleged to have been converted. *Branham v. Prewitt*, 636 S.W.2d 507, 512 (Tex.App. 1982) writ ref'd n.r.e., 643 S.W.2d 122 (1983); *Izaks v. National Bank of Commerce*, 547 S.W.2d 345, 348 (Tex.Civ.App. 1977, no writ).

Plaintiffs Modesta, *et al.,* failed to prove that OGMD owned the equipment on the G.C. Walker lease at the time Modesta attempted to acquire title through the execution sale by the United States Marshal. Trustees in their pleadings did not claim title to same. No other plaintiff than Modesta claims title to such equipment. The first four assignments of error of Modesta are overruled.

We remain convinced that our holding as to insufficiency of evidence on rental value, and the error in computing same, was correct. Assignment of error number 5 is overruled.

In assignment of error number 6 it is argued that we erred in holding that all plaintiffs were not entitled to judgment. For the reasons stated in our original opinion, assignment of error number 6 is overruled.

The motion for rehearing of Modesta, *et al.* is overruled.

PHILLIPS, C.J., not participating.